## CITY OF PEORIA

### *v.*

### JACOB DARST *et al.*

*Filed at Ottawa January 18, 1882—Rehearing denied March Term, 1882.*

1. CONSTRUCTION *of deeds and wills—intention must control.* It is a rule in construing deeds or wills, that the intention of the grantor or testator, as manifested by the words of the writings, in connection with the surrounding circumstances, must be carried into effect, if no rule of law will thereby be violated, or sound public policy be disturbed. In ascertaining such intention one clause or part is not to be viewed but in connection with all the other parts.

2. SAME—*character of estate created by deed—as to inheritance from grantee.* A father of two illegitimate children conveyed real estate to their

39—101 ILL.

mother for her life, with remainder in fee to such children, or the survivor of them, who might survive their mother or leave issue, and in the *habendum* clause of the deed provided that .if such children should ·survive their mother, and die without making any disposition of the property, by will or otherwise, and without issue, then it should go to the city of Peoria, etc.: *Held*, that the intent was, that in case of the survivorship of the children they should take and enjoy the property devised to their use *personally*, and have the full benefit of it, even to the extent of selling or devising it in fee; but in case of their death without issue, or disposition of it by them, no such estate had vested in them as could pass by *descent* to any one.

3. REMAINDER—*vested and contingent—defined.* A contingent remainder is one, the vesting or taking effect of which in interest is, by the terms of its creation, made to depend upon some contingency which may never happen; while a vested remainder is one that takes effect immediately upon the making of the instrument creating it, though its enjoyment is postponed until the termination of the prior estate.

4. SAME—*a deed construed—whether a vested or contingent remainder.* Where the father of two illegitimate children conveyed real estate to their mother for the term of her natural life, with remainder to his two children in fee simple, as joint tenants,—that is to say, the mother to have a life estate in the property, and at her death the fee simple to vest in the children, or in the survivor of them, with this further clause immediately following: "If, however, both of them should die before the termination of the C. estate," (that being the life estate of the mother,) "and to leave no child or children, then at the death of the said C. the title is to vest in the city of Peoria for the benefit of orphan children," etc., it was *held*, the grant to the children was not of a vested remainder, but that they took a contingent right only, depending upon the event of both or one of them surviving the mother or having issue, and they both having died in the lifetime of the mother, leaving no issue, that the title, on the death of the mother, vested in the city of Peoria.

5. ESTATE—*application of the rule as to limiting a remainder in fee after a prior one.* Where two limitations over in fee to one and to another, are concurrent contingent remainders, limited alternately on the same event to take effect, not the one subsequent to the other in succession, but the one as a substitute for the other, this will not be the limitation of a fee after a fee, and is permissible.

6. Where both limitations are to take effect, the latter can do so only as an executory devise, for a remainder originally contingent, but afterwards vested by the happening of the contingency, is essentially the same as if it had been vested at its origin; but where both are limited alternately on the same event, by the happening of which one is to vest in exclusion of the other, then both are contingent remainders, and if such event never happens, the second remainder will take effect.

APPEAL from the Circuit Court of Peoria county; the Hon. JOHN BURNS, Judge, presiding.

This was a proceeding, by petition of Jacob Darst, for the partition of certain real estate in the city of Peoria. The property originally belonged to George Morton, through whom all the parties to the record claim, and the controversy in the case turns upon the construction to be given to a deed executed by him of the premises in 1852. The deed is as follows:

"This deed, made and entered into this 12th day of August, in the year of our Lord 1852, by and between George Morton, of the city of St. Louis, county of St. Louis, and State of Missouri, party of the first part, Mary M. Clark, of the city of Peoria and State of Illinois, party of the second part, George Douglass Morton and Mary Helen Morton, both of the city of Peoria and State of Illinois, parties of the third part:

"Witnesseth, that the said party of the first part, for and in consideration of the sum of $3000 to him in hand paid by the said party of the second part, the receipt of which is hereby acknowledged, has granted, bargained and sold, conveyed and confirmed, unto the said party of the second part, the following lots of ground in block numbered 85, of the city of Peoria, being lots numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12, being the whole of said block 85, situated in Morton, Voris & Larveille's addition to the town of Peoria. To have and to hold, unto the said Mary M. Clark, for and during her natural life, remainder to George Douglass Morton and Mary Helen Morton in fee simple, as joint tenants,— that is, the said Mary M. Clark to have a life estate in said property, and at her death the fee simple title to the property to vest in George D. and Mary Helen Morton, or in the survivor of them. If, however, both of them should die before the termination of Mary M. Clark's estate, and to leave no child or children, then, at the death of said Mary M. Clark,

the title is to vest in the said city of Peoria for the benefit of orphan children, to be used for said purpose as the authorities of said city may think most expedient. If the said George D. Morton and Mary Helen Morton, or either of them, should survive the said Mary M. Clark, and should die without making any disposition of the property, by will or otherwise, it is in that event to go to the said city of Peoria for the benefit of orphan children, as aforesaid. The said George D. Morton was born in the city of St. Louis on the 18th day of July, 1850, and the said Mary Helen Morton was born in the city of St. Louis on the — day of ———, 1852. And the said party of the first part hereby covenants that his heirs, executors and administrators will warrant and defend the title to the said premises, and every part thereof, to them, the said parties of the third part, and to their heirs and assigns forever, against the lawful claim or claims of all and every person or persons whomsoever claiming or to claim the same, or any part thereof.

"In witness whereof the said party of the first part has hereunto set his hand and seal the day and year first herein written.

"Signed in presence of Lawrence T. Poland.

GEORGE MORTON. [Seal.]"

At the time of the making of the deed Mary M. Clark was a widow with four children, Frank Clark, Benjamin Clark, George Douglass Morton, and Mary Helen Morton. The two latter were the illegitimate children of George Morton, the grantor in the deed, and both died in 1855 or 1856, the said Mary Helen first, and George Douglass a few hours later on the same day, leaving surviving them, as their only heirs, their mother, Mary M. Clark, and their half-brothers, Benjamin and Frank Clark. On August 23, 1858, Mary M. Clark conveyed to the city of Peoria all her title and interest in the premises, and soon thereafter the city entered into possession of the same, and made valuable improvements, and

have continued to use and occupy them up to the time of the commencement of this suit. On October 3, 1861, Frank Clark conveyed to the petitioner, Jacob Darst, all his title and interest in the premises. Mary M. Clark is now dead, having died some time in 1865.

Upon this state of facts the circuit court found that Darst and Benjamin Clark were respectively owners in fee of one-fourth of the premises, and that the city of Peoria was the owner of one-half, and decreed accordingly. The city appealed.

Messrs. COOPER & TENNERY, for the appellant:

The rules of construction require that all the language of the grant shall be considered, and effect given to it, unless so repugnant or meaningless that it can not be done. *Cooper* v. *Cooper*, 76 Ill. 60; *Brownfield* v. *Wilson*, 78 id. 467.

In construing deeds or wills the intention of the grantor or testator, as manifested by the words of the writing, in connection with surrounding circumstances, must be carried into effect. *Pool* v. *Blakie*, 53 Ill. 495.

As to the distinction between vested and contingent remainders, the following authorities were cited: 2 Blackstone's Com. 168, 170; 2 Washburn on Real Prop. 224, 228, 240.

The office of the *habendum* in a deed is not to grant any estate in the first instance, but merely to limit or define the extent or certainty of an estate previously granted. *Frink* v. *Darst*, 14 Ill. 304; *Cooper* v. *Cooper*, 76 id. 57.

The grant is to the mother for life, and at her death to the two children, or the survivor of them, and in case both of them shall die childless before their mother, then at the death of the mother the title to vest in the city of Peoria, etc. And not only so, but if the two children, or either of them, should survive the mother, and should die without making any disposition of the property, by will or otherwise, it should go to the city of Peoria. This clearly expressed intent should be carried out by the courts.

The terms employed to designate those who are next to take after them exclude the idea of inheritance. These terms are "child or children," which are words of purchase, in contradistinction to the term "heir," which is held to be a word of limitation. *Baker* v. *Scott,* 62 Ill. 86; *Beacroft* v. *Strawn,* 67 id. 28; *Butler* v. *Huestis,* 68 id. 594.

But admitting that an estate in fee did in the first instance vest in the two children as grantees in the deed, we insist such estate was not absolute in its character, but subject to be afterwards divested upon a contingency, which in fact has occurred. *Illinois Land and Loan Co.* v. *Bonner,* 75 Ill. 315.

Mr. H. W. Wells, for the appellee:

The deed conveyed a remainder in fee, which vested upon its delivery. An estate in remainder vests at the earliest possible moment. For example: "I give and devise to A, etc., for life, and upon his death, to B." The remainder vests at once. *Doe* v. *Considine,* 6 Wall. 474; *Manderson* v. *Lukins,* 23 Pa. St. 31; Williams on Real Prop. 242; 4 Kent's Com. 203; 1 Cruise's Digest, 237.

A conveyance to A for life, remainder in fee to B. Here B takes a remainder which vests upon the delivery of the deed to A. *Ide* v. *Ide,* 5 Mass. 500; *Burbank* v. *Whitney,* 24 Pick. 146; *Wimple* v. *Fonda,* 2 Johns. 288; *Hall* v. *Tuffs,* 28 Pick. 455.

A vested remainder is where a present interest passes to a definite person *in esse,* to be enjoyed *in futuro.* Preston on Estates, 70; 2 Washburn on Real Prop. (4th ed.) p. 542.

No degree of uncertainty as to the remainder-man ever enjoying the possession of the estate can defeat it, provided he has the present absolute right to the estate the instant the prior estate is determined. 2 Washburn on Real Prop. (4th ed.) p. 547; *Pierce* v. *Savage,* 45 Me. 90.; *Coxall* v. *Sherrard,* 5 Wall. 269; *Brown et al.* v. *Laurence et al.* 3 Cush. 390.

A remainder is never contingent where it can be construed to be vested.  2 Washburn on Real Prop. (4th ed.) p. 542; *Manderson* v. *Lukins*, 23 Pa. St. 31; *Leslie* v. *Marshall*, 31 Barb. 566; *Blanchard* v. *Brooks*, 12 Pick. 47; *Coxall* v. *Sherrard*, 5 Wall. 289.

If the deed passed a vested remainder in fee simple, it was not competent for the grantor to divest that estate, nor to change the law of descent by any subsequent clause in the deed.  *Riggin* v. *Love*, 72 Ill. 553; *Siegwald* v. *Siegwald*, 37 id. 437; *Proprietors Church & Co.* v. *Grant*, 3 Gray, 142; *McLean* v. *McDonald*, 2 Barb. 535.

No remainder can be limited after a fee.  *Blanchard* v. *Brooks*, 12 Pick. 46; Bouvier's Inst. 249, 288.

The rules governing the construction of wills and deeds are entirely different.  A will is presumed to be made in extremity, and without the aid of counsel, (Bouvier's Inst. vol. 2, p. 293, Cruise's Digest, vol. 3, p. 444,) while a deed is presumed to be made upon the advice and with the assistance of counsel.  4 Kent's Com. 264, 501; *Siegwald* v. *Siegwald*, 37 Ill. 430; *Butler* v. *Huestis*, 68 id. 594; *Brownfield* v. *Wilson*, 78 id. 467.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The city of Peoria claims the exclusive title to the land in question, under the deed of George Morton.  There can be no doubt as to the intention of the maker of that deed.  It was as clear as can be expressed by language, that on the contingency which has here happened,—the death of Mary Helen Morton and George Douglass Morton, childless, in the lifetime of Mary M. Clark,—the property, on the death of the latter, should go to the city of Peoria for the benefit of orphan children.  The express words of the deed are, that if both the said Mary Helen and George Douglass should die before the termination of Mary M. Clark's life estate, and leave no child or children, then, at the death of said Mary

M. Clark, the title should vest in the city of Peoria for the benefit of orphan children. The said Mary Helen and George Douglass both did die childless, in the lifetime of Mary M. Clark. Why, then, at her death should not the title vest in the city of Peoria, as the deed intended and expressly declared it should?

"The law," says Mr. Powell, in his notes to Wood's Conveyancing, as quoted in 3 Washburn on Real Prop. 621, marginal, "is curious, and almost subtilizes to devise reasons and means to make assurances and deeds inure according to the just intent of parties, and to avoid wrong and injury which, by abiding by rigid rules, may be wrought out of innocent acts."

This court said, in *Pool* v. *Blakie*, 53 Ill. 502: "It is a rule in construing deeds or wills, that the intention of the grantor or testator, as manifested by the words of the writings, in connection with surrounding circumstances, must be carried into effect." It is certainly so when, as afterward said in that case, no rule of law will be violated, or sound public policy disturbed.

As the reason why the intention of the grantor here should not be allowed to prevail, and must be defeated, appellee's counsel asserts that the deed conveys an absolute remainder in fee simple to George Douglass and Mary Helen Morton, which vested in them upon the instant of the delivery of the deed in 1852, and that the subsequent limitation to the city of Peoria was an attempt to limit a fee upon a fee, and was inoperative and void by the rule of the ancient common law, which did not permit any limitation of an estate over after the grant of a previous fee. But is it not an unwarrantable assumption that there is here a limitation, in the first place, of a remainder in fee to the children, absolutely and unconditionally? Some ground for it may be found if we read the first branch of the *habendum* clause of the deed by itself, disconnected from what follows. But such a mode of constru-

ing an instrument is not admissible. One part is not to be viewed by itself, but in connection with other parts, and the meaning of a deed is what it is found to be from taking and considering all of its parts together, and not from what any single clause by itself may show. And of especial force is this rule here, where the first branch of this *habendum* clause has immediately following it the words, "if, however." These are qualifying words,—words of condition,—denoting that what precedes is not the precise grant, and that what follows must be read to see what the exact grant is. The first clause says, at the death of the mother the fee simple title to the property is to vest in the children, or the survivor of them. "*If, however,*" immediately following in the next clause, "both of them should die before the termination of Mary M. Clark's estate, and to leave no child or children, then, at the death of said Mary M. Clark, the title is to vest in the city of Peoria for the benefit of orphan children."

Connected together, then, as these first and second branches of the *habendum* clause are by the qualifying conditional words above, the first alone does not show what estate is granted to the children, but both must be taken together as showing it; and reading both clauses together, we find that it is not a fixed right of future enjoyment after the death of the mother which is granted to the children, but a contingent one only, dependent upon the event of both or one of them surviving the mother, or having issue. In case of such surviving or having issue, then the fee simple title, at the death of the mother, is to vest in the children, or the survivor; but in the contrary event, the title is to vest in the city of Peoria. The two clauses being separated only by a punctuating point, and no regard being had to punctuation in construing a deed, they are really but one clause,—one entire expression how the property should go. It was an uncertain event whether or no the children, or either of them, would survive the mother or leave issue, and so whether the remainder to them would

ever take effect. The estate thus limited comes within the proper definition of a contingent remainder, as being "one whose vesting or taking effect in interest is, by the terms of its creation, made to depend upon some contingency which may never happen at all." (2 Washburn on Real Property, 519.) And even the first clause of the *habendum* names the death of Mary M. Clark as the time for the title to vest in George D. and Mary Helen Morton.

We find, then, upon construction of the two clauses which give the remainder, taken together, and not looking to the first one singly, that the limitation of estate over to George D. and Mary Helen Morton was not an immediate vested interest in remainder, which they took on the making of the deed, but that it was a contingent remainder, depending upon a contingency which might not, and in fact did not, happen, whether it ever should take effect.

We may here advert to the third branch of the *habendum* clause, (which perhaps might more properly have been done in another connection when speaking of the intention,— making provision in case the remainder shall take effect in favor of the children,) which provides, that if the children, or either of them, should survive the mother, and should die without making any disposition of the property, it should then go to the city of Peoria. This is a further manifestation of the purpose of the grantor to restrict the grant of the property, after the termination of the life estate in Mary M. Clark, to the use *personally* of these two children and the survivor of them, or any child of either, so that no estate should vest in George D. and Mary Helen Morton which could pass by *descent* to any one. They being the illegitimate children of the grantor by Mary M. Clark, he gives to her by the deed a life estate in the premises in question, and intends that at her death these children, if they or either of them live to take and enjoy it, shall do so, and have the full benefit of it, even to the extent of selling or devising it in

fee; but if they, or either of them, do not so live to take, and die without issue of their own, then his purpose, as to be derived from the deed, is, rather than that the property should pass *by descent* to the heirs-at-law of these children, of no kin to himself, that it should go to the city of Peoria for the benefit of orphan children; and so the deed by express appointment fixes the time when the remainder to the children shall vest, to be at the termination of the life estate. And the question, as before observed, is, whether the deed may not be so construed as to effectuate the intention of the grantor, or are we forced to adopt a construction which will thwart it.

The remainder to these children being a contingent remainder, the limitation of estate over to the city of Peoria does not come within the prohibition of the rule that no remainder can be limited after a remainder in fee. The two limitations of estate over to the children and to the city of Peoria are concurrent contingent remainders in fee, limited alternately on the same event to take effect,—not the one subsequent to the other, in succession, but as a substitute for the other. This is not a limitation of a fee after a fee, and is permissible.

Mr. Washburn, in his treatise on Real Property, says: "Notwithstanding a remainder limited after a remainder in fee would be void, as has been often repeated, yet two remainders may be so limited, though each a fee, as to be good, provided this is so done that only one is to take effect, the one being a substitute for and not subsequent to the other. The consequence is, that if the first takes effect and becomes vested, the other at once becomes void. Such limitation is said to be *of a fee with a double aspect.* A case illustrative of this proposition is that of *Luddington* v. *Kime,* 1 Lord Raymond, 203, where the devise was to A for life, and if he had male issue, then to such issue and his heirs; but if A died without issue male, then to T. B. in fee. Here are two remain-

ders contingent in their character, and both in fee, dependent upon the same particular estate, and to take effect, if at all, upon the determination of that estate, and only one of these can take effect. If A has issue, the remainder vests at once in such issue, and defeats the limitation to T. B. altogether. On the other hand, if A dies without issue, T. B.'s remainder at once vests in him, and takes effect as a substitute for the other,—neither is, by its terms, to wait until the other shall have once taken effect and afterwards been determined." 2 Washburn on Real Prop. 250, marg. The author cites several other authorities in support of the text, among them *Dunwoodie* v. *Reed,* 3 Serg. & R. 452. In that case the testator devised to his daughter, Jane Dunwoodie, during her natural life, and at her decease unto her male heir, John Dunwoodie, if alive at her death, otherwise unto her next male heir, and it was held Jane Dunwoodie took an estate for life, with concurrent contingent remainders to John Dunwoodie, or such person as, in the event of his death in the lifetime of Jane Dunwoodie, should be her heir male. It was there said, by Tilghman, Ch. J.: "The will presents a contingency with a double aspect, to be determined immediately on the death of Jane Dunwoodie. At that moment an estate in fee was to vest in somebody,—in John Dunwoodie, if living; but if not, in the next heir male of Jane; but in whomsoever it vested, it was *indefeasible.* There was no limitation, therefore, of a fee after a fee, but a limitation of only one indefeasible estate in fee." And, further, by Gibson, J.: "But two or more several contingent remainders in fee may be limited, the one to be *substituted* for the other, instead of being dependent and to take effect in succession."

From all the cases the rule seems to be this: Where *both* limitations are to take effect, the latter can do so only as an executory devise, for a remainder originally contingent, but afterwards vested by the happening of the contingency, is essentially the same as if it had been vested at its origin;

but where both are limited alternately on the same event, by the happening of which one is to vest in exclusion of the other, then both are contingent remainders.

Our conclusion is, that the limitation over to the city of Peoria was not void as being the limitation of a fee after a fee,—that the contingency upon which George D. and Mary Helen Morton were to take never happened, and so no interest ever vested in them, and hence that the city of Peoria took and now hold, under the deed, the whole title.

The decree of the circuit court will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. CHIEF JUSTICE CRAIG, and Mr. JUSTICE MULKEY, dissent.

| 101  621 |
| 29a  516 |

*Filed at Ottawa November 10, 1881—Rehearing denied March Term, 1882.*