Frances L. Hobbie, Executrix, etc., et al. v. Marianna A. Ogden et al.

1. DEEDS—*Construction of Terms Used in.*—The words "his heirs" as used in a conveyance of real estate can neither be ignored nor treated as words of limitation. Although they are usually words of limitation, yet they are held to be words of purchase when used with the word "or" indicating substitution, and in reference to a certain fixed time of distribution, as after the termination of an intermediate estate.

2. REAL PROPERTY—*Vesting of Remainders.*—When the gift of a remainder is made only by direction to distribute in the future, and not by any antecedent words of gift, the vesting of such remainder is deferred to the time of distribution.

3. SAME—*Exceptions to Rule Before Stated.*—There is a well defined exception to the general rule, viz., to the effect that even though there be no antecedent words of gift and no other gift than in the direction to pay or distribute in the future, yet if such distribution appear to be postponed for the convenience of the fund or property alone and not at all for reasons personal to the donee, then the gift in remainder vests at once and will not be deferred until the period of distribution arises.

4. WORDS AND PHRASES—"*His Heirs.*"—The word "heirs" in its ordinary and general acceptation implies heirs at the time of the ancestor's death; in the strict and technical import, it applies to the persons appointed by law to succeed to the estate in case of intestacy; and when the word occurs in a will it will be held to apply to those who are heirs of the testator at his death unless the intention of the testator to refer to those who shall be his heirs at a period subsequent to his death is plainly manifested in the will.

5. PRACTICE—*When Counsel Must Indicate What he Expects to Prove.*—Where exceptions are taken to the rulings of the trial court in sustaining objections to questions propounded to a witness, counsel must indicate to the court what it is proposed to show by the answer to such questions. Unless this is done such rulings can not be reviewed for error.

Bill, for the construction of a deed. Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed December 16, 1897.

Hobbie v. Ogden.

## Statement of the Case.

The questions presented in this case relate to the construction of the terms of a deed made in the year 1853, by Albert G. Hobbie and Eleanor O. Hobbie, conveying certain real property in the city of Chicago to William B. Ogden, in trust, for the purposes and upon the trusts in the deed set forth.    The deed is substantially as follows:

Made the 21st day of May, 1853, between Albert G. Hobbie and Eleanor O. Hobbie, and William B. Ogden, trustee, witnesseth: Whereas a decree of divorce between Albert G. Hobbie and Eleanor O. Hobbie has this day been entered in the Cook County Court of Common Pleas, by which it is ordered that said Albert G. Hobbie and Eleanor O. Hobbie shall convey by deed to William B. Ogden, trustee, the premises hereinafter described, now, therefore, in pursuance of said decree and for the purpose of carrying out the same, and for providing for the support and maintenance of said Eleanor O. Hobbie during her natural life, and for the support and education of Lydia Harper Hobbie and Orlanda Reeves Hobbie, daughters of said Eleanor, the said Albert G. Hobbie and the said Eleanor O. Hobbie do hereby grant, convey, etc., unto said Ogden, in trust, as hereinafter stated, in fee simple, lots, etc., (describing certain lots situated in Chicago, Cook county, Illinois,) to have and to hold said premises unto the said Ogden upon the following trusts and conditions, to wit:

*First.*    To pay all taxes and assessments upon the property and fund hereby created, and such reasonable costs and expenses as may be necessary in the execution of this trust, including a reasonable compensation to the trustees.

*Second.*    To pay said Eleanor O. Hobbie the rents, issues and profits of said property for the support of herself and the support and education of her children, Lydia Harper Hobbie and Orlanda Reeves Hobbie, until the sale of the premises as herein provided.

*Third.*    To sell said premises in whole or in parcels at as early a period as the same can be done without sacrifice, upon the best terms possible, either for cash or on credit,

and upon such sale to make all such conveyances as may be necessary to vest in the purchaser a good and sufficient title to the same.

*Fourth.* To invest and reinvest from time to time, the fund so arising from such sale by loaning the same at the highest rate of legal interest, such loans to be secured upon unincumbered real estate of at least double the value of the amount secured thereon, exclusive of buildings and improvements thereon.

*Fifth.* The interest arising, either from the credit given on sales, or from the loaning of the fund, to be paid semi-annually to the said Eleanor O. Hobbie during her natural life, for the support of herself and the support and education of her said two daughters, Lydia and Orlanda.

*Sixth.* Upon the death of the said Eleanor O. Hobbie, said trustee shall transfer, convey, pay over and deliver to the said Albert G. Hobbie, or his heirs, the said trust fund and the property, assets and securities arising out of or belonging to the same, excepting only therefrom the rents, issues, profits and interest paid to the said Eleanor O. Hobbie, as hereinbefore provided, and the costs, expenses and disbursements incurred in the execution of this trust.

And the said Albert G. Hobbie hereby covenants with said trustee that the said premises are free and clear from all incumbrance, and that he is seized of a perfect, sure and absolute title in fee simple, and has full power to convey the same, and the said premises against any person lawfully claiming or to claim the same he will forever warrant and defend.

And the said William B. Ogden, as aforesaid trustee, hereby covenants and agrees to accept this trust, and to well and faithfully perform, fulfill and execute all and singular the trusts hereinbefore declared, according to the tenor and effect, true intent and meaning thereof.

In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

(Signed) ALBERT G. HOBBIE,    [SEAL.]
ELEANOR O. HOBBIE,    [SEAL.]
W. B. ODGEN.    [SEAL.]

On August 29, 1855, after the decree of divorce and the making of the said deed, Albert G. Hobbie intermarried with Frances L. Hobbie, and a few years later Eleanor O. Hobbie intermarried with Leander Read.

Three children were born of the marriage of Albert G. Hobbie and Eleanor O. Hobbie, viz.: William M. Hobbie, Lydia Harper Hobbie and Orlanda Reeves Hobbie; and two children were born of the marriage of Albert G. Hobbie and Frances L. Hobbie, viz.: Isaac R. Hobbie and Walter S. Hobbie. On May 13, 1868, Albert G. Hobbie died testate, leaving him surviving his widow and the five children above named. About the year 1865, Ogden, as trustee, sold the realty conveyed to him by the deed above set forth, to Leander Read, husband of Eleanor O. Read, for the sum of $20,000. In 1877 Ogden died testate.

On the 11th of April, 1879, the sum of nine thousand dollars was paid by the executrix and trustees of the will of William B. Ogden, to Eleanor O. Read, and a release was executed, reciting such payment as consideration, by Eleanor O. Read and husband, Lydia Harper Cone, formerly Lydia Harper Hobbie, and Orlanda Reeves Brown, formerly Orlanda Reeves Hobbie, which release is as follows:

" In consideration of nine thousand (9,000) dollars to us in hand paid, and other good and valuable considerations to us and each of us moving, we, Eleanor O. Read, heretofore Eleanor O. Hobbie, and Leander Read, her husband, and Lydia Harper Cone, and Orlanda Reeves Brown, daughters of said Eleanor O. Read, do hereby release and discharge Marianna A. Ogden, Edwin H. Sheldon, Andrew H. Green, William O. Wheeler and William E. Strong, executors and trustees under the last will and testament of William B. Ogden, deceased, and also the heirs, devisees and personal representatives of said William B. Ogden, deceased, from all and every claim and demand of every nature and kind, and from all liability to us or either of us, in any manner or way, by reason of said William B. Ogden being the trustee in a certain deed of trust bearing date the 21st day of May, A. D. 1853, between Albert G. Hobbie

and Eleanor O. Hobbie, party of the first part, and the said William B. Ogden, party of the second part, or by reason of any money or security in any way controlled by said Ogden, or passing into or through his hands as such trustee; the said trust created by said instrument having been fully and entirely discharged to the satisfaction of the parties hereto, who have thereupon, as aforesaid, released and discharged, and do hereby release and discharge, all liability or obligation to them, in any manner or way, further releasing all the said parties hereinbefore mentioned from any and all liability of any nature or kind to us, or either of us, for any matter or thing whatsoever.

In witness whereof we have hereunto set our hands and seals this 11th day of April, A. D. 1879.

|  |  |
|---|---|
| (Signed) ELEANOR O. READ, | [SEAL.] |
| LEANDER READ, | [SEAL.] |
| LYDIA HARPER CONE, | [SEAL.] |
| ORLANDA REEVES BROWN. | [SEAL.] |

Acknowledged and witnessed before C. H. Ferry."

Just what amount of interest arising from the trust fund had been paid to Eleanor O. Read prior to the date of this release, is a matter of uncertainty. It does, however, appear that the sum of $1,809.11 was paid to her on account of said trust in the year 1875.

Frances L. Hobbie, the widow of Albert G. Hobbie, is now sole executrix of his last will. Marianna A. Ogden, William A. Wheeler and Andrew H. Green are executrix and trustees of the last will of William B. Ogden.

The conflict of interests arises in the construction to be put upon the sixth item or clause in the trust provisions of the deed before set forth, and relates to the disposition of the remainder after the life interest of Eleanor O. Read, now deceased.

By her bill, filed in the Circuit Court of Cook County, Frances L. Hobbie, as executrix of the will of Albert G. Hobbie, prays an accounting by the executrix and trustees of the will of William B. Ogden, the trustee in said deed; and by her cross-bill in the same cause, Lydia Harper Cone,

formerly Lydia Harper Hobbie, also prays for an accounting by said executrix and trustees of the will of Ogden, as to her alleged interest in the trust fund, and that they may be decreed to pay over to her one-third part of said trust fund, with interest, etc.    The answers of the executrix and trustees of the will of William B. Ogden to both bill and cross-bill, deny any right in complainant or cross-complainant to any of the relief prayed, and set up as against the equities of Lydia Harper Cone the release heretofore described.    Hearing was had in the Circuit Court upon bill and cross-bill, answers and replications thereto, and a decree entered dismissing both bill and cross-bill for want of equity. From that decree this appeal is prosecuted by complainant and cross-complainant.

WILLIAM R. HUNTER, attorney for appellant Frances L. Hobbie; MARVIN BLANCHARD, of counsel.

The law favors the vesting of estates, and will construe the terms of an instrument as creating a vested interest if possible.    Ducker v. Burnham, 146 Ill. 22; Scofield v. Olcott, 120 Ill. 362; Kellett v. Shepard, 139 Ill. 433; 4 Kent, 203.

The law presumes the words of postponement relate to the enjoyment of the remainder rather than to the vesting thereof, and the intent to postpone the vesting of the estate must be clear and manifest.    Ducker v. Burnham, 146 Ill. 22;  Heilman v. Heilman, 129 Ind. 59.

"A remainder is vested in interest where a person is in being and ascertained, who will, if he lives, have an absolute and immediate right to the possession of the land upon the ceasing or failure of all the preceding estates, provided the estate limited to him by the remainder shall so long last."    Hawley v. James, 5 Paige (N. Y.) 466.

PENCE & CARPENTER, attorneys for appellant Lydia Harper Cone, contended that the words "or his heirs," are technically words of limitation, but in this case they are used as words of purchase, and always have that operation

when it sufficiently appears that the term is used to designate a particular person or a class of persons who may stand in that relation at the happening of a certain event, or at a certain period. No one can have heirs while living, and the word "or," therefore, as here used, indicates substitution, and the payment or distribution is to be made upon the termination of the immediate estate—that is, upon the determination of the estate of the divorced wife by her death; and that the estate then became vested for the first time upon the death of Eleanor O. Hobbie, and that the persons who were to take are such persons as would be the heirs at law of Albert G. Hobbie, and who were living at the time the estate became vested, which is the time of distribution. The word "heirs" in this connection is simply *descriptio personarum* and is not a word of limitation. Ebey v. Adams, 135 Ill. 80; Salisbury v. Petty, 3 Hare, 86; Girdlestone v. Doe, 2 Sim. 225; Rob v. Belt, 12 B. Mon. (Ky.) 643; Wren v. Hynes' Adm., 2 Metc. (Ky.) 129; In re Porter's Trust, 4 Kay & J. 188; Cripchase v. Simpson, 16 Sim. 485; Crooke v. De Vandes, 9 Ves. 199; Montague v. Nucella, 1 Russ. 165; Gittings v. McDermott, 2 Myl. & K. 69; Blundell v. Chapman, 33 Beav. 648; Penley v. Penley, 12 Beav. 547; Jacobs v. Jacobs, 16 Beav. 557; Finlason v. Tatlock, L. R., 9 Eq. 258; Timmins v. Stackhouse, 27 Beav. 434; 1 Jarman on Wills (Bigelow's Ed.), p. 516; Butler v. Bushnell, 3 Myl. & K. 232.

The principle distinguishing a contingent from a vested estate in personal property is this: That where there is a present or immediate gift and the payment is postponed to some future day, then such gift is vested; but where there is no gift except in the directions to pay over or divide the estate, then such gift becomes vested only upon the happening of the event upon which the estate is to be distributed.

The subject-matter in controversy is personal property. Land devised to be sold and the proceeds distributed, is a devise of the proceeds and not of the land. Ebey v. Adams, 135 Ill. 80; Crerar v. Williams, 145 Ill. 640; Baker v. Copenbarger, 15 Ill. 103; Jennings v. Smith, 29 Ill. 116.

The doctrine is that every person claiming property under an instrument directing its conversion, must take it in the character which that instrument has imposed upon it, and its subsequent devolution and disposition will be governed by the rules applicable to that species of property. Strode v. McCormick, 158 Ill. 146.

A present interest only passes by deed, discharge or release, unless a future or contingent interest is expressly mentioned in the instrument and is sought thereby to be transferred, controlled, disposed of or released. Rich v. Lord, 18 Pick. 322; Glover v. Condell, 163 Ill. 566; Striker v. Mott, 28 N. Y. 82.

WILSON, MOORE & McILVAINE, attorneys for appellees.

" Ordinarily, the words 'heirs,' or 'heirs at law,' are used to designate those persons who answer this description at the death of the testator. The word ' heir,' in its strict and technical import, applies to the person or persons appointed by law to succeed to the estate in case of intestacy. Kellett v. Shepard, 139 Ill. 433; 2 Black. Com. 201; Rawson v. Rawson, 52 Ill. 62. Hence, where the word occurs in a will, it will be held to apply to those who are heirs of the testator at his death unless the intention of the testator to refer to those who shall be his heirs at a period subsequent to his death, is plainly manifested in the will. This construction or definition is not changed by the fact that a life estate may precede the bequest to the heirs at law, nor by the circumstances that the bequest to the heirs is contingent on an event that may, or may not happen. 2 Jarm. on Wills, 672, R. & T. 5th Am. Ed.; 2 Wms. on Ex'rs, 1211, 6th Am. Ed.

A direction that personal property shall be divided at the expiration of an estate for life creates a vested interest. McArthur v. Scott, 113 U. S. 380; Shattuck v. Stedman, 2 Pick. 467; Hallifax v. Wilson, 16 Ves. 168; In re Bennett's Trust, 3 K. & J. 280; Strother v. Dutton, 1 DeG. & Jones 675.

MR. JUSTICE SEARS DELIVERED THE OPINION OF THE COURT.
In order to pass upon the rights of complainant and cross-

complainant, as disclosed by bill and cross-bill respectively, it becomes necessary to determine in whom and when the remainder of the trust fund vested by the terms of the sixth clause of the trust provisions. The sixth clause provides that "Upon the death of the said Eleanor O. Hobbie, said trustee shall transfer, convey, pay over and deliver to the said Albert G. Hobbie, or his heirs, the said trust fund," etc.

The alleged rights of Frances L. Hobbie, as executrix of the will of Albert G. Hobbie, rest upon the proposition that by the terms of this sixth clause the remainder in the fund, subject to the life use of Eleanor O. Hobbie, at once vested in Albert G. Hobbie upon the delivery of the deed, and therefore was disposed of by general devise (including all his property) in his last will. To test the correctness of this proposition, it is necessary to determine the effect to be given to the words "or his heirs" in the gift or grant of the remainder; and to sustain the proposition, it would be necessary to give no effect whatever to the words "or his heirs," or to give them the effect of words of limitation only.

We think the authorities, both in this State and elsewhere, clearly settle that the words can neither be ignored nor treated as words of limitation. Although the words "heirs" and "his heirs" are usually words of limitation, yet they are held to be words of purchase when used as here, with the word "or," indicating substitution, and in reference to a future fixed time of payment or distribution, as after the termination of an intermediate estate. Ebey v. Adams, 135 Ill. 80.

In the case cited the question arose upon the use of the words "or their heirs" in a devise. The provision of one clause of the will was that "upon the death or remarriage of my wife, it is my will and I so direct, that all my estate, etc., shall be sold on terms, etc., and from the proceeds they (executors) will pay (certain legacies) and the balance of my estate my executors are hereby directed to distribute among my children, or their heirs, to wit (naming children), etc. The court in construing the words "or their heirs" say: "The direction, it will be observed, is to distribute

the residue of the proceeds of the testator's estate among his children or their heirs. * * * The words ' heir ' or ' their heirs' are technically words of limitation; but in this and other cases they are used as words of purchase, and always have that operation when it sufficiently appears that the term is used to designate a particular person or particular persons, who may stand in that relation at the happening of a certain event, or at a certain period, and not to the whole line of heirs in succession." Quoting from Redfield on Wills, the opinion says : " The cases where the word ' or ' being interposed between the names of the first devisee or legatee, and his heirs, has been held to indicate the intention of substituting the latter in place of the ancestor, are numerous, and being more recent, as a general thing, and more in consonance with the words used, must be regarded as defining the most reliable rule." 1 Redfield on Law of Wills, 486. The opinion cites as supporting this construction, 1 Jarman on Wills, 514–521; Salisbury v. Petty, 3 Hare, 86; Girdlestone v. Doe, 2 Sim. 225; Gittings v. McDermot, 2 M. & K. 69; Price v. Lockley, 6 Beav. 180; Doody v. Higgins, 9 Hare App. 31; In re Craven, 23 Beav. 333; Rob v. Belt, 12 B. Mon. 643; Wren v. Hynes' Adm., 2 Metc. ( Ky.) 129.

We conclude, therefore, that the words " or his heirs " as used in this deed, are words of purchase, and not words of limitation. In reaching this conclusion we necessarily hold that the gift of the remainder was an alternative or substitutional gift. That the language of the deed is, in effect, as if if had directed in terms that the trustee pay the remainder, after the death of Eleanor O. Hobbie, to Albert G. Hobbie, if he be then living, or, in the event of his death before the death of Eleanor, then to his heirs. That such alternative or substitutional gift of a remainder may be made by deed as well as by will, is settled in City of Peoria v. Darst, 101 Ill. 609, wherein the court in construing a deed, quote from Dunwoodie v. Reed, 3 Serg. & R. 452, as follows : " But two or more several contingent remainders in fee may be limited, the one to be substituted for the other,

instead of being dependent and to take effect in succession." Our consideration thus far disposes only of the alleged rights of Frances L. Hobbie, as executrix, by the determination that the gift of the remainder was, as to Albert G. Hobbie and his heirs, a substitutional gift, and hence contingent, and that no title to the remainder vested in Albert G. Hobbie prior to his death, and hence no rights could have accrued to his executrix under his will.

It being determined that the heirs of Albert G. Hobbie were by his death substituted for him as takers of the remainder and by purchase under the deed, the question now arises, did the remainder vest in those who were his heirs at the time of his death *eo instanti*, or was the remainder yet contingent as to such heirs, *i. e.*, contingent as to each heir upon his or her survival beyond the intermediate estate. In other words, did the remainder vest in such as were heirs of Hobbie at his death, or in such only as could come under the designation "his heirs" living when the period of distribution arrived.

The deed here disposes of the remainder by words of distribution only, that is to say, it contains no antecedent words of gift, and the gift of the remainder is effected only by the direction to distribute upon the termination of the intermediate estate.

It is well settled, as a general rule, that where the gift of a remainder is made only by direction to distribute *in futuro* and not by any antecedent words of gift, the vesting of such remainder is deferred to the time of distribution. The leading case announcing this rule is that of Leake v. Robinson, 2 Mer. 363, quoted from with approval in Blatchford v. Newberry, 99 Ill. 45, and McCartney v. Osburn, 118 Ill. 403, which latter case was followed by Kingman v. Harmon, 131 Ill. 171.

But there is a well defined exception to this general rule, viz.: To the effect that even though there be no antecedent words of gift, and no other gift than in the direction to pay or distribute *in futuro*, yet if such payment or distribution appear to be postponed for the convenience of the fund or

property alone, and not at all for reasons personal to the donee, then the gift in remainder vests at once, and the vesting will not be deferred until the period of distribution arrives.  Scofield v. Olcott, 120 Ill. 362.

In this case Mr. Justice Magruder, delivering the opinion of the court, says: "But even though there be no other gift than in the direction to pay or distribute *in futuro*, yet if such payment or distribution appear to be postponed for the convenience of the fund or property, as when the future gift is postponed to let in some other interest, for instance, if there is a prior gift for life, or a bequest to trustee to pay debts, and a direction to pay upon the decease of the legatee for life, or after payment of the debts, the gift in remainder vests at once, and will not be deferred until the period in question.  But where the payment is deferred for reasons personal to the legatee, the gift will not vest till the appointed time.  2 Jarman on Wills (R. & T.'s Ed.), 458; Theobold's Law of Wills, 412.  Thus, a gift to a person, if or when he shall attain a certain age, will not vest until the age is attained.  Idem.  In other words, if the reason for the postponement is the position of the fund, the bequest in remainder vests at once; but if it is the position of the legatee, the remainder is contingent.  In re Bennett's Trusts, 3 Kay & J. 280."  See also Ducker v. Burnham, 146 Ill. 9; Carper v. Crowl, 149 Ill. 465.

We have seen that the gift of the remainder in this deed is affected only by the direction for distribution *in futuro*, and hence that it would fall within the general rule; unless, by reason of the purpose of the postponement of the distribution, it falls within the exception to the rule which has been noted.  It remains then to determine whether the postponement here was solely for the convenience of the fund, or as well for reasons personal to the donees.

That the primary purpose of postponement was for the convenience of the fund, is apparent.  The deed was made to comply with the command of the court, expressed in its decree, and for the purpose of providing for the support and maintenance of Eleanor O. Hobbie during her natural life,

and the support and education of her daughters.   The
postponement of distribution and the precise limit of the
postponement is fixed by this primary purpose of the deed,
viz., to create an intermediate estate during the lifetime of
Eleanor O. Hobbie, and that is to say, that it was a post-
ponement for the convenience of the estate or fund.   This
much may be gathered with certainty from the recitals of
the deed, but the further question must be answered—was
there not coupled with this primary purpose of postpone-
ment, another purpose, viz., a purpose to postpone the dis-
tribution in contemplation of the survivorship of such of
those who might be heirs of Albert G. Hobbie at his death
if he predeceased Eleanor, as should outlive the intermedi-
ate estate and be living at the period of distribution—that
is to say, a purpose to postpone distribution for reasons per-
sonal to the donee?

There are no words contained in the deed which directly
indicate any such purpose.   The words " his heirs " are not
coupled with any limitation, such as " then surviving," or
" then living."   The word " heirs " in its ordinary and gen-
eral acceptation, implies heirs at the time of the ancestor's
death.   Kellett v. Shepard, 139 Ill. 433; Minot v. Tappan,
122 Mass. 535; Dove v. Torr, 128 Mass. 38.

In the former case, Kellett v. Shepard, the court say :
" Ordinarily, the words ' heirs ' or ' heirs at law,' are used
to designate those persons who answer this description at
the death of the testator.   The word ' heirs,' in its strict and
technical import, applies to the person or persons appointed
by law to succeed to the estate in case of intestacy.   2
Blackstone Com. 201; Rawson v. Rawson 52 Ill. 62.
Hence, where the word occurs in a will, it will be held to
apply to those who are heirs of the testator at his death,
unless the intention of the testator to refer to those who
shall be his heirs at a period subsequent to his death is
plainly manifested in the will.   This construction or defi-
nition is not changed by the fact that a life estate may pre-
cede the bequest to the heirs at law, nor by the circum-
stance that the bequest to the heirs is contingent on an

event that may or may not happen.  2 Jarman on Wills, 672, R. & T. 5th Am. Ed.; 2 Williams on Ex'rs, 1211, 6th Am. Ed."

In Minot v. Tappan, *supra*, the court say :  " The general rule is well settled that a bequest or devise to the ' heirs ' or the ' heirs at law ' of a testator will be construed as referring to those who are such at the time of the testator's death, unless a different intent is plainly manifested by the will.   We are unable to find in this will any decisive indications that the testator in the clause we are considering, intended by his ' heirs at law ' those who should be such at the death of his son George, without issue.   There are no words of contingency such as ' if they shall be living at his death,' or ' to such of my heirs as shall be then living,' which would naturally be used if the intention were to limit the devise or bequest *to such of the class as should be then living.*   *   *   *

The fact that the clause in question contains a direction that the trustees are, in default of issue of George, to ' convey and transfer the same to my heirs at law,' has but little significance to show the intention of the testator, because, upon either construction, such a direction is necessary or suitable, in order to terminate the trust estate and convert the equitable estates of the heirs at law into legal estates. In this case, the clause to be construed provided for an intermediate life use, during the life of the testator's son George, and  (with other provisions) that in default of any such child or children (of George) or issue (of any such child) then living, then in trust to convey and transfer the same to my heirs at law," etc.

But it is contended that where a gift of remainder is made by words directing a distribution *in futuro*, and a class is designed as donees, none can be permitted to take except such as are *in esse* and of the class at the time of distribution; and it is argued that the words " his heirs " designate a class, and hence come within the rule.   In support of this contention counsel cite Handberry v. Doolittle, 38 Ill. 202; McCartney v. Osburn, 118 Ill. 417; Ebey v. Adams, 135 Ill.

80; Strode v. McCormick, 158 Ill. 142; Sears v. Russell, 8 Gray, 86.

We examine the cases cited to learn whether the effect of these decisions is to hold that the use of a word designating a class in the instances given, is of itself conclusive of a contemplation of survivorship, and hence of a reason of postponement personal to the donee; or whether, under the facts of each case some special reason is found for holding the use of such a word to have there indicated such purpose.

In the case of Handberry v. Doolittle, *supra*, there was a devise of one-fourth of the estate to a brother, A.; one-fourth to a brother, G.; one-fourth to the children (naming them) of a brother, I., and one-fourth to "the children" (not naming them) of a brother R. There was no intermediate estate for life devised. The will provided specifically as to the children of R., that they "shall likewise take by survivorship from each other." It will therefore be perceived that the question here occurring could not have arisen in that case. The only effect of the decision there was to hold that a child of R., born after the death of the testator, took an interest. And as to that the court say: "But apart from this rule of construction, there is a peculiarity in the phraseology of the will, which indicates it to have been the clear intent of the testator to include any after-born children of his brother Rawley. In providing for the children of his deceased brother Irwin, he devises to them by their proper names instead of describing them merely as children of his brother. But as his brother Rawley was still living and might have more children, instead of devising to them by their proper names, he simply devises to them as a class, using the generic term, children. Why this difference in the two cases, unless he had in view the possible after-born children of Rawley?"

In McCartney v. Osburn, *supra*, the cause of the will in controversy expressly provided for division between "the heirs of the said Henrietta that may be living at the time of said division."

In Ebey v. Adams, *supra*, the direction was to distribute

the remainder among his children, or their heirs, and the decision was that it was an alternative or substitutional devise, and that only such children could take as survived the period of distribution.    The words there to be construed were " the children," not the words " or their heirs."    And " the children " were held to be only alternative takers, for whom " their heirs " might be substituted if the children did not survive until the time of distribution.    " The children " in that case occupied precisely the position which Albert G. Hobbie occupied here, viz., the first taker named with possibility of substitution of another in the event of the death of the first taker before distribution.    The interest of the children was there held, as the interest of Albert G. Hobbie is here held, to have been contingent.    There was no occasion in that case to pass upon the time of the vesting of interest in the " heirs " who might be substituted for the children.

In Sears v. Russell, *supra*, the court say :    " The rules of construction, that the word ' heirs ' is usually construed to mean those who are such at the time of the testator's decease, and that estates created by devise are to be held to be vested rather than contingent, must give way to the controlling rule of interpretation that the intent of the testator is to govern, etc.    *    *    *    The intent of the testator in making the limitation to his heirs at law in this clause of the will, is not left in any doubt.    It is expressly declared to be to prevent his son-in-law from inheriting," etc.    It is apparent that it was the facts peculiar to the provisions of the will, and not the application of any rule as to the use of a word designating a class, which governed in this, as in the other cases.

The case of Strode v. McCormick, *supra*, is in many respects very nearly like the case under consideration. There, as here, the question arose from words used in a deed disposing of a remainder; and there, as here, the deed was made to create an intermediate life estate for the use of a divorced wife of the grantor.    In that case, however, there was not, as here, any substitutional gift, and the word there

to be construed was "children." The court, in deciding that case, say :

"There is to be found in the deed no direct gift or grant to the children of the grantor. The deed simply directs the trustees that at the death of Mary B. Strode they shall sell the lot and divide its proceeds equally among the children of the grantor. When the time appointed for the sale and distribution arrived in 1878, there were only three children surviving, and these three children, and they only, were within the description of those among whom the division was to be made. No one other than a person who could, at the time of the death of Mary B. Strode, predicate of himself or herself that he or she was one of the children of James M. Strode, and issue of his marriage with Mary B. Strode, could rightfully claim anything under and by virtue of the deed. It appears from the record that the grantor in the deed was a lawyer, and therefore all the stronger is the presumption that would prevail without this circumstance that he knew full well the names of the children born of his marriage, and that when he did not name them or make any direct gift or grant to them, or either of them, either antecedent or subsequent to the direction of the trustees, but simply directed the trustees at the death of his wife, to make division of a designated fund among his 'children,' the issue of his marriage, he contemplated the contingency of a death or deaths before the time of distribution."

It seems then, that the reasoning of that case is, that while no words appear which, considered of themselves, would be absolutely indicative of survivorship, yet because the word is "children" and because the donor knew their names and readily might, and naturally would, have named them individually, and yet did not so name them, therefore he did have, and thereby expressed, an intent of survivorship and of postponement of the gift of the remainder not only until the convenience of the fund was served, by the expiration of the use of the intermediate estate, but as well until it should be determined in the course of natural events how many of the children should survive their mother, his divorced wife.

The same reason could hardly apply here. As we have noted in the case of Strode v. McCormick, there was no element of substitutional gift as here. The two times of alleged vesting were there the time of the delivery of the deed and the time of the end of the intermediate estate. And in comparison with this deed they stand for the time of the death of Albert G. Hobbie (not the delivery of the deed) and the end of the intermediate estate. Strode could have named his children individually at the time of the making of the deed had he so desired. Hobbie could not, when this deed was made, have named the ones who would be his heirs at the time of his death. The failure to name individually in the case of the Strode deed is interpreted to have been a matter of choice, and to have meant something, viz., postponement in a contemplation of survivorship. The failure here to name individually was not a matter of choice, but inevitable.

It is not to be disputed that the rule has been frequently announced that when a testator or donor chooses words designating a class, and the devise or gift to them is by words of distribution *in futuro* only, it is therefrom presumed that the intent was to devise or give to such of the class only as could predicate of themselves at the period of distribution that they are then of the class. But the reason of the rule arises from the *choice* of such designation by testator or donor, who, instead of naming individually, chooses to thus indicate a contemplation of survivorship. This interpretation of the rule is supported by the decision in Minot v. Tappan, *supra*, where the court say, " There are no words of contingency such as 'if they shall be living at his death, or ' to such of my heirs as shall be then living,' which would naturally be used if the intention were to limit the devise or bequest *to such of the class as should be then living.*" It is also supported by the language of Kellett v. Shepard, *supra*.

As we do not understand the cases above cited and considered, to establish any absolute rule that the use of words like the words in question, indicating a class, is conclusive of a postponement for reasons personal to the

donees, and as we find in the facts of this case and the recitals of this deed no indication that the postponement here was for any reason whatever personal to the donees, we hold that the postponement was solely for the convenience of the fund.

If in thus seeking to discover the intent of the donor as a guide to the conclusion reached, we have followed methods of construction usually applied to the construction of wills rather than of deeds, it yet remains true that in so doing we do not at all drift away from the ordinary and accepted meaning of the words in question by giving them an artificial meaning, supposed to be more consonant with the intent of the donor; but on the contrary, we are here led to the same conclusion which would be reached if the more rigid rules of construction applicable to deeds, were followed. The authorities before cited leave no ground to doubt that the established meaning of the words " his heirs " is to indicate those who are heirs at the death of the ancestor. And though the rules applied here are largely such as have been announced in and become established through decisions involving construction of wills, yet those rules may be also applied to the construction of deeds, as in City of Peoria v. Darst, *supra*, and Strode v. McCormick, *supra*.

We are of opinion, therefore, that the remainder vested upon the death of Albert G. Hobbie in such as were then his heirs at law, and that such heirs then took a present fixed right of future enjoyment, which enjoyment only was deferred thereafter until the expiration of the life estate. It follows that the interest of Lydia Harper Cone was a vested interest at the date of the execution of the release hereinbefore set forth, to wit, on April 11, 1879.

It is contended further by counsel for cross-complainant, Lydia Harper Cone, that even though her interest in the remainder of the fund had become vested at the time of the execution of the release, yet the release ought not to be held to convey that interest, because it does not appear that she, as *cestui que trust*, had full knowledge of all the facts and circumstances of the case, or knew at that time what

were her rights in the trust fund.    It is complained in this connection that the Circuit Court erred in excluding evidence proffered to show the circumstances of the settlement which resulted in the executing of the release in question.

Mrs. Cone, the cross-complainant, testified that·the signature to the release was her signature; but, in answer to a question as to the circumstances of signing it, stated that she had no remembrance whatever of signing it.    The only testimony bearing upon the circumstances of the settlement which was excluded by the trial court, is that of the witness Charles H. Ferry, who acted as attorney for Eleanor O. Read in effecting the settlement.    Mr. Whitehouse acted as attorney for the executrix and trustees of the Ogden estate.    The questions to which objections were sustained were as follows:

" Q.    Now, will you tell the court, at the ·time this settlement was made, how much was due from the Ogden estate to Mrs. Read and Mrs. Cone and Mrs. Brown, because they were all entitled to an interest therefrom for support and maintenance ?    In 1879, when this was settled, how much was due her interest account ?

" Now, was the question discussed between you and Mrs. Read and Mr. Whitehouse as to the amount that was due on account of this fund ?

" Q.    Did you hear a conversation with Mr. Whitehouse and Mrs. Read as to this purport:    Mr. Whitehouse wanted Mrs. Read to take a smaller sum because he said after this settlement they would have to settle with the Hobbie heirs.

" Q.    What was the conversation on that subject-matter, whether the fund or the interest in the fund was settled in this negotiation about the fund itself ?    Just state what conversation was had between you and Mr. Whitehouse.

" Q.    What, if anything, was said on the subject-matter of there being still a liability on the part of the Ogden estate to the heirs of Hobbie ?

" Q.    Now, there is a release here purporting to be signed by Mr. and Mrs. Read, Mrs. Cone and Mrs. Brown.    You appear to have taken the acknowledgment of the parties.

Will you look at that instrument and state whether you read over that instrument to either Mrs. Cone or Mrs. Brown?

" Q. Do you know if they knew of the contents of that instrument?

" Q. Did you in that negotiation read them to Mrs. Cone or Mrs. Brown?

"Q. Now; in the settlement between you and Mrs. Read and Mr. Whitehouse for the Ogden estate, was not the amount ascertained or talked over what was due from the Ogden estate to Mrs. Read from the income of this fund? ·

" Q. Was it not agreed that the amount due Mrs. Read from the income of this fund was greater than the amount paid to her?"

Exceptions were taken to the rulings of the court in sustaining objections to each of these questions, but in no instance did counsel indicate to the court what it was proposed to show by answer to the questions. The rulings of the court can not, therefore, be reviewed for error. Howard v. Tedford, 70 Ill. App. 660; Berkowsky v. Cahill, page 101, this volume.

The answer given by this witness to another question would indicate that no talk was had with Mrs. Cone at that time.

" Q. Did you have no conversation with them (referring to Mrs. Cone and Mrs. Brown) about the subject-matter of the settlement—with either of them?"

"A. No."

Some testimony was excluded bearing upon the execution of the release by Mrs. Brown, which is not material here, not having been connected with the execution by Mrs. Read or Mrs. Cone.

William B. Ogden, the trustee, died in 1877, and while no definite showing is made to that effect, yet it would seem from the evidence altogether likely that the trust fund was lost by him before his death. In the argument of the case counsel for the several parties have treated it as an admitted fact that the fund had become lost through bad investments.

The testimony of Fishburn would tend to show that the trustees under the will of Ogden never received any part of the trust estate. Upon these facts, and nothing further appearing, we are not prepared to hold that the release discharging the executrix and trustees of Ogden from liability for the trust fund, executed by cross-complainant, who was then an adult and married woman, was obtained under circumstances which invalidate it. Nothing is pleaded in this behalf, and nothing proved, which would warrant the court in so holding.

The conclusion of the court therefore is, that the word "heirs" as here used is a word of purchase, and not of limitation; that the gift was alternative or substitutional, and that upon the death of Albert G. Hobbie before the expiration of the intermediate estate the "heirs" named in the deed were substituted for him as takers of the remainder and by purchase under the deed; that the use of the word "heirs," designating a class, instead of naming donees individually, being not by choice or election of the donor, but unavoidable, because he could not at the time of making the deed know who might be his heirs at the time of his death, was therefore not such use of a word designating a class as conveyed any conclusion of a postponement for reasons personal to the donees, i. e., by contemplation of survivorship; that all else in the deed, viz., the use of the word "heirs," which in its common acception means heirs at the death of the ancestor, and the general purpose of the deed, which was to comply with an order of court in creating the intermediate estate, indicate that the postponement here was clearly for the convenience of the estate or fund alone; that therefore, though the gift is by words of distribution only, and not by words antecedent to the direction for distribution, yet the rule that the vesting is deferred to the period of distribution does not here apply, as the case comes under the exception of cases where the postponement is for the convenience of the estate only, and not for reasons personal to the donees; that the remainder having vested in the heirs of Albert G. Hobbie at the time of his death, the

interest of cross-complainant, Lydia Harper Cone, one of those heirs, was a vested interest at the date of the release, which was after the death of Albert G. Hobbie, and that such interest was conveyed by the terms of the release; that under the facts and circumstances of this case, so far as disclosed by the evidence, no sufficient reason appears for holding the release to have been unconscionable even as between personal representatives of a deceased trustee and a *cestui que trust.*

The bill and cross-bill were therefore without equity, and were properly dismissed.

The decree is affirmed.