## GEORGE EBEY *et al.*

*v.*

## JOHN P. ADAMS *et al.*

*Filed at Springfield November 1, 1890.*

1. WILLS—*rule of construction.* The intention of the testator is to be sought for and found in the provisions of his will, taking into consideration all its parts, and giving the language the sense in which it was used by him. For this purpose the court will look to every provision of the will, the better to understand the plan of distribution adopted, and the purpose of the testator in making a particular provision.

2. SAME—*quantity of estate taken by the executor or trustee.* The general principle applicable to the execution of trusts by an executor is, that he, as trustee, will take exactly that quantity of interest which the purpose of the trust requires. If the fee is required, it will be taken; but if a less estate will suffice, that only will vest.

3. SAME—*direction to sell lands—and distribute proceeds—is a devise of money, not of land.* Where a testator directs the sale of his lands and

other estate by his executor, and a distribution of the proceeds, the devisees will take no interest in the land. Such a devise is of money, regardless of the fact whether the legal estate in the land is devised to the executor or not.

4. SAME—*election to take land—instead of the proceeds.* Where land is devised to be sold and the proceeds distributed, the beneficiaries of the fund thus to be raised may elect to take the land itself; but such election, to avail, must be the act of all the beneficiaries.

5. SAME—*time of distribution—who may take, at the period of distribution—vested or contingent interest.* A testator, by his will, after giving all his estate to his wife during her life or widowhood, directed that upon her death or marriage all his estate be sold by his executors, and that from the proceeds they pay a certain sum to each of two grandchildren, if of age, and if not, to their guardians; and provided that in case of the death of either of the grandchildren, the sum so devised to him or her should be distributed among the testator's children: *Held,* that the payment to the grandchildren or their guardians was to be made after the sale of the estate and its conversion into money. If the grandchildren should die before the sale, their legacies would lapse or fall into the general fund devised to the children of the testator.

6. In the same will, after providing for distribution as above set forth, the testator directed his executors to distribute the balance of his estate among his six living children, "or their heirs :" *Held,* that the only persons entitled to share in the distribution were such of his children as might be living at the time appointed for distribution, which was on the termination of the prior estate in the widow, and the heirs of such of the children as may have died in the meantime. The testator's children did not take a vested interest, but only a contingent one.

7. In such case, one of the daughters of the testator, by warranty deed, conveyed her supposed interest in the estate of the testator, and died before the period for distribution arrived: *Held,* that the grantor had no interest to convey, and that her heirs took her share in the estate, not as heirs, but as purchasers, under the will, and hence were not estopped by the covenants in her deed.

WRIT OF ERROR to the Circuit Court of Scott county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. MORRISON & WHITLOCK, for the plaintiffs in error:

When action is taken under a direction to sell and convert land into money, this will not prevent the property from descending to the heirs. *Gill* v. *Mining Co.* 92 Ill. 249.

6—135 ILL.

In this case there is no question of survivorship, as was made in *Nicoll* v. *Scott,* 92 Ill. 529, and *Blatchford* v. *Newberry,* 99 id. 11.

The mere fact that one estate under a will is provided to take effect after the termination of an intervening one, will not have the effect to prevent both estates becoming vested at the same moment of the decease of the testator,—the one in possession, the other in prospect or remainder. The question of vesting or remaining contingent depends upon whether the condition of the intervening estate determining, and the estate ·overtaking, is one that must happen some time or may never happen.. If the former, then the second estate in remainder will always be regarded as vested. *Nicoll* v. *Scott,* 99 Ill. 529; 2 Redfield on Wills, 215.

The remainder in fee vested, at the time of the death of Absalom Adams, in those mentioned in the third clause of the will. It was vested with the possibility of being divested by the exercise of the power given the executors. But suppose that the executors had performed no act in execution of the power. Suppose they had remained quiescent,—doing nothing; would it have been necessary for the parties to whom the proceeds of the sale were to be paid, to do any act in order ·to obtain the title? The remainder must have vested in some one. If not in the parties to be benefited by the bequest, then in the executors,—those who were to exercise the naked power of sale. If the remainder vested in John P. Adams and Willis G. Adams, as executors, and they failed to act, would it have been necessary for an order of court to divest them of the title? We do not see that it would.

The deeds made by Mrs. Lewis were duly executed, and passed her contingent interest, and her heirs should be held to be estopped, by the covenants in the same, from setting up any claim to the property, now that the life estate has fallen. *Ridgeway* v. *Underwood,* 67 Ill. 419.

Mr. J. M. RIGGS, and Mr. J. C. BOWMAN, for the defendants in error:

· It is settled that a bequest of the proceeds of real estate, directed to be converted into money, is a bequest of money. *Baker* v. *Copenbarger,* 15 Ill. 103 ; *Jennings* v. *Smith,* 29 id. 122 ; *Rankin* v. *Rankin,* 36 id. 299 ; *Germain* v. *Baltes,* 113 id. 33.

While it is settled that where the proceeds of land are bequeathed, the beneficiaries may, under some circumstances, elect to take the land, and thus prevent a sale, it is just as well settled that this can only be done by the action of all concerned. *Baker* v. *Copenbarger, supra; Jennings* v. *Smith, supra.*

When a will orders the sale of the estate after the expiration of a life estate, and the proceeds to be distributed between the testator's children "or their heirs," the latter words will be held as providing for a substitutional gift in case of the death of one of the children. *Wren* v. *Hynes,* 2 Metc. 129 ; *Wingfield* v. *Wingfield,* 9 Ch. Div. 658 ; *Girdlestone* v. *Doe,* 2 Sim. 225 ; *Finlason* v. *Tatlock,* L. R. 9 Eq. 258 ; *Doody* v. *Higgins,* 9 Hare, 31 ; *In re Craven,* 23 Beav. 333 ; *Gittings* v. *McDermott,* 2 M. & K. 69.

In a New York case, where the gift was to "Mary Phelan and her heirs," the words "and her heirs," were read, "or her heirs," and the gift was held to be substitutional. *Hawn* v. *Banks,* 4 Edw. Ch. 664.

Where the alternative words, "or their children," have been similarly employed, the gifts have been held substitutional. *O'Brien* v. *Heeney,* 2 Edw. Ch. 248 ; *Atkinson* v. *Bartrum,* 28 Beav. 219 ; *Crooke* v. *De Vandes,* 9 Ves. 196 ; *Timins* v. *Stackhouse,* 27 Beav. 434 ; *Newman* v. *Nightingale,* 1 Cox C. C. 341.

Where the words, "or the heirs of their bodies," have been used in like connection, the same ruling has been adopted. *Anderson* v. *Smoot,* 1 Speers, 312 ; *Robb* v. *Belt,* 12 B. Mon. 644 ; *Salisbury* v. *Petty,* 3 Hare, 85 ; *Price* v. *Lockley,* 6 Beav. 180.

Where the alternative expression, "or their families," was used, the same doctrine was applied.   *Burt* v. *Hellyar*, L. R. 14 Eq. 160.

So, also, where the alternative expression was, "or their legal representatives."   *King* v. *Cleveland*, 9 DeG. & J. 477.

In all these cases the same rule was applied with reference to the doctrine of substitution, although there were verbal differences in the alternative clauses employed.   The following cases also support the doctrine:   *Jennings* v. *Jennings*, 44 Ill. 488;   *Banta* v. *Boyd*, 118 id. 191;   *Baker* v. *Copenbarger*, 15 id. 103;   1 Redfield on Wills, (3d ed.) *486, 487.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The only question presented by this record is, did Elmira Lewis, daughter of the testator, take a vested interest in the lands and estate of the testator, or in the proceeds thereof.   If she did, it is not questioned that her interest therein passed, by her conveyances and transfers thereof, to Ebey and McLaughlin, and her heirs would be estopped by her deeds from asserting title thereto, and it would follow that the decree of the circuit court is erroneous.   If she did not take a vested interest under her father's will, then it is clear that her children are entitled under the will, and Ebey and McLaughlin took nothing by their conveyances from her, and the decree of the trial court should be affirmed.

By the second clause of the will the entire estate, real and personal, after the payment of debts, was devised to the widow of the testator for her life, or widowhood.   She having died without again marrying, no significance attaches to that provision of the will, and it will be unnecessary to notice the effect which might have been produced by her re-marrying.

The third clause of the will provides:   "Upon the death or re-marriage of my wife, Minerva, it is my will, and I do so direct, that all my estate, real and personal, shall be sold on such terms as shall appear best and most judicious to my

executors, and from the proceeds they will pay to Minerva Adams, the daughter of Daniel Adams, my son, deceased, if of age, (if not, to her guardian,) the sum of $1000; and to Daniel Adams, the son of my son, James Adams, deceased, if of age, (if not, to his guardian,) the like sum of $1000; and the balance of the proceeds of my estate my executors are hereby directed to distribute among my children or their heirs, to-wit," (naming his six living children,) "share and share alike, with this exception: my executors will pay or deliver to Elmira Lewis and Mary A. McGlasson $1000, each, more than my other children." It was then further provided, that if either of the grandchildren named died without issue before "they are of age," the $1000 directed to be paid them, or the one so dying, "shall be distributed equally among my above named children."

There was here no devise of the land, or of any interest in land, either to the children or grandchildren of the testator. Land devised to be sold, and the proceeds distributed, is a devise of the proceeds and not of the land. (*Baker* v. *Copenbarger*, 15 Ill. 103; *Jennings* v. *Smith*, 29 id. 116; *Rankin* v. *Rankin*, 36 id. 298; *In re Corrington*, 124 id. 363.) This conclusion is not at all affected, as seems to be supposed by counsel, by the fact that the legal estate is not, in terms, devised to the executors. It can make no difference whether it be held to be devised by implication to the executors, as necessary to enable them to execute the trust, or it was left by the will to descend to the heir-at-law. The general principle applicable to the execution of trusts of this character is, that the trustee will take "exactly that quantity of interest which the purposes of the trust require." If the fee is required, the fee will be taken; if a less estate will suffice, a less estate, only, will be vested. (2 Jarman on Wills, 305, 306.) But as was said in the *Baker case, supra*: "The legal title to the land is held in trust for the purposes specified in the will, whether the title is left by the will to descend to the heir by operation

of law, or by the will it is vested in a trustee; nor does it make any difference, in this respect, that the legal title descends to the devisee to whom the bequest is to be paid in money when the land is sold." In either event, the title would be divested upon the execution of the power of sale.

It is undoubtedly the rule, as suggested by counsel, that where land is devised to be sold, and the proceeds distributed, the beneficiaries of the fund thus to be raised may elect to take the land; but each devisee has a separate right to insist upon the provisions made by the will for his benefit. Hence, as said in the case last mentioned, such election can only be effective when it is the act of all the distributees of the fund. There has been no such election, if, indeed, there could be, in this case, and the devise is therefore to be treated as a devise of money, to be raised by a sale of all the testator's estate, after the termination of the particular estate created in the testator's widow.

Did the testator intend, as a condition to his children taking under his will, that they should survive the time appointed for the payment of the legacy? The inquiry always is, what did the testator intend?—and the answer is to be sought for and found in the provisions of the will, taking into consideration all its parts, and giving to the language the sense in which it was used by the testator. For this purpose the court will look to every provision of the will, the better to understand the plan of distribution adopted, and the purpose of the testator in making the particular provision under consideration.

The direction, it will be observed, is to distribute the residue of the proceeds of the testator's estate among his children, *or their heirs.* The specific devises to the two grandchildren are first to be paid out of the proceeds of the sale of the testator's property, which is directed to be made after the termination of the intermediate estate. In determining whether the testator intended, as a condition to the vesting of the legacy in his children, that they should survive the time of distribution,

it would seem that some indication may be found in the language employed in respect of such specific legacies. The direction is, to pay to the grandchildren, if of age,—if not, to their guardian. In a subsequent portion of the will it is provided, that in the event of either of them dying without issue before they are of age, then the portion so bequeathed to them is to fall into the residue, and be subject to the general order of distribution. The testator may control his estate until the time of payment arrives or distribution thereof is made. It is apparent that the testator must have contemplated that one or both of the grandchildren might die before some period in the testator's mind, other than their arriving at age or having issue, for it is expressly provided that the legacy to them is to be paid them personally, if of age, and if they are not of age, to their guardian. When was such payment to be made? Manifestly, after the sale by the executor of the testator's estate. And it would seem that if the grandchildren died before that period, under age and without issue, their portion was to be distributed to the children of the testator. If this be true, it is clear that the testator did not intend that the legacy should vest in the grandchildren absolutely, until the time arrived when the payment should be made. It was contingent upon their then being alive to take, or that they had arrived at age, or died leaving issue; and it would also follow, that the testator must have had in contemplation that the residue of his estate might be increased by the falling in of these specific legacies.

Having determined that the testator had in contemplation a day of distribution after the determination of the particular estate, and after a sale of the property then remaining, and the legacy to his children being in the direction to distribute to them the balance of the proceeds after the payment of the specific legacies, which, as we have seen, might not vest an interest until the time of payment arrived, it will be proper to consider the particular devise to the children.

The balance of the proceeds of the estate is to be distrib-
uted "among my children *or* their heirs." There seems not
to be entire unanimity in the adjudged cases in respect of the
effect of the interposition of the word "or" between the name
of the legatee or devisee, and the word "heirs" of such person.
Mr. Redfield says: "There is also a class of cases, somewhat
numerous, where the word 'or' is interposed between the name
of the first legatee or devisee and the heirs of such person,
as, to A or his heirs forever or in tail, in regard to which there
has been considerable discussion, and where there does not
seem to be perfect coincidence. Some of the earlier cases, where
this occurs, incline to treat the variation from the usual form
of creating such limitations as merely accidental, and as not
being intended to create any different estates. The cases where
the word 'or' being interposed between the name of the first
devisee or legatee, and his heirs, has been held to indicate
the intention of substituting the latter in place of the ancestor,
are numerous, and being more recent, as a general thing, and
more in consonance with the words used, must be regarded as
defining the most reliable rule." 1 Redfield on Law of Wills,
486.

In *Salisbury* v. *Petty*, 3 Hare, 85, Wigram, vice-Chancellor,
construed the word "or," in this connection, to mean, "in case
of the death of;" and the rule being, that if a legacy is not
payable immediately upon the death of the testator, but an
intermediate life estate is given, and the testator provides that
in case of the death of the legatee it is to be given to some
one else, then the words, "in case of the death of," are con-
strued to mean, "in the lifetime of the tenant for life,"—that
is to say, before the money becomes payable, and it was there
held that it created an alternative devise. See, also, *Harvey*
v. *McLaughlin*, 1 Price, 264; 1 Jarman on Wills, *514-521.

In *Girdlestone* v. *Doe*, 2 Sim. 225, Doe bequeathed to Mary
Tattershall, the yearly sum of £40, to be paid out of the in-
terest arising out of certain annuities, to be enjoyed by her

during her life, and after her decease gave and bequeathed the same to his nephew, James Holman, "or his heirs." After the testator's death, Holman, in the lifetime of the life tenant, Tattershall, assigned his interest in the annuity to Girdlestone. Holman died in the lifetime of the life tenant. Upon the decease of the latter (Tattershall), a bill was filed by Girdlestone to compel the payment of the annuity to him, as assignee of Holman. It was held, that "or" must be construed disjunctively, and that the testator contemplated that the nephew might not be alive at the death of Tattershall, and therefore he did not take an absolute interest in the annuity. See, also, *Gittings* v. *McDermott*, 2 M. & K. 69 ; *Price* v. *Lockley*, 6 Beav. 180 ; *Doody* v. *Higgins*, 9 Hare's App. 31; *In re Craven*, 23 Beav. 333.

In the case of *Rob* v. *Belt*, 12 B. Mon. 643, this question came before the Court of Appeals of Kentucky. The ninth item of the will there under consideration devised to the widow of the testator all of his real and personal estate during her widowhood. It was then provided, that if she should marry, all of the testator's estate "be equally divided among my eight children, *or* the heirs legally begotten of their bodies ;" and should she die without marrying, "the property is equally to be divided among my eight children, *or* their heirs above expressed." It was contended, that upon the death of the testator the eight children took a vested interest in remainder,—the possession only being postponed until the marriage or death of the widow. The question there arose, as here, in all substantial particulars, and it was decided that a proper construction of the devise required the division to be made between the testator's children who were living at the time of the event referred to,— *i. e.*, the marriage or death of the widow, and the heirs of the bodies of such as then might be dead. It was held that the devise was in the alternative,—that the words, "or their bodily heirs," were to be taken as a designation of persons who were to take, or as words of purchase, and were equivalent to the

words, "or such descendants of any that may be dead or may then be their heirs," referring to the time of the division of the estate; and it was said: "But as the testator does not say 'among my living children,' but 'among my eight children,' *or* is proper to show, and does show, as to some of them there is an alternative devise in case of their death before the time referred to, and that in that event the heirs of the bodies of the deceased are to take in place of the deceased."

In the subsequent case of *Wren* v. *Hynes*, 2 Metc. 129, the devise was of certain bank stock, which it was provided "shall be equally divided among all my surviving children, or their heirs," and it was held that the words "or their heirs" were used, not as words of limitation, but as words of purchase. It is said they were intended to operate as an alternative devise, or a devise over, in the event that any of the children should die, leaving issue, before the period of distribution. The court also held that intrinsic evidence afforded by other provisions of the will was proper to be considered in fortifying the construction given. See Williams on Executors, (3d Am. ed.) 1141; *O'Brien* v. *Heeney*, 2 Edw. Ch. 248; *Timmins* v. *Stackhouse*, 27 Beav. 434.

Numerous authorities may be found to sustain this position, but it will be unnecessary to extend the citation. The words "heir" or "their heirs" are technically words of limitation; but in this and other cases they are used as words of purchase, and always have that operation when it sufficiently appears that the term is used to designate a particular person, or particular persons who may stand in that relation at the happening of a certain event or at a certain period, and not to the whole line of heirs in succession. No one can have heirs while living. The word "or," therefore, as here used, indicates substitution, and the payment or distribution is to be made at a fixed period,—*i. e.*, upon the sale by the executors after the termination of the intermediate estate. It would seem clear, therefore, that the persons who were to take are such of the

children as might be living at the time of distribution, and the heirs of such as might have pre-deceased. It follows, when this language is considered in connection with the context, that there was here created an alternative devise. Such of the children as were living at the time of distribution would take, and such persons as would fall under the designation of "heirs" of such as had pre-deceased would take the share or portion that their ancestor would have taken if living. The vesting of the estate in interest, as well as in possession, in the children of the testator, depended upon their surviving the day of distribution,—in other words, time is of the substance of the gift, and related to the vesting of the legacies in interest as well as in possession.

It being shown that the daughter of the testator, Elmira Lewis, died before the termination of the intermediate estate, leaving heirs, it follows from what has been said that she took no interest under the will, but the persons standing in the relation of heirs to her, upon the termination of such estate, took under the will, and as purchasers, the share she would have taken had she survived that period. Having no interest in the estate, she could by her conveyance or assignment transfer none.

It is insisted that the children and heirs of Elmira Lewis are estopped by the covenants in her deeds to plaintiffs in error from asserting title. The fallacy of this position is at once apparent from the mere statement that the persons designated as her heirs take, under the will, from the testator, and as purchasers, and not by or through or as representatives of their mother. They in no sense hold under or derive title from or through her.

We are of opinion that the circuit court properly construed the will, and its decree will be affirmed.

*Decree affirmed.*