JAMES A. LASH

v.

WILLIAM E. LASH, EXR. et al.

*Opinion filed April 20, 1904—Rehearing denied June 8, 1904.*

1. WILLS—*when power to sell land vests in executor by implication of law.* Power to sell land vests in an executor by implication of law although not conferred in express terms by the will, where it is his duty, under the will, to apply the proceeds of the sale of the land to payment of the legacies therein designated.

2. SAME—*when land will not descend to heirs.* The testator's intention that his land shall not descend to the heirs is shown by a will plainly giving the use of the land to his wife for life and directing that after her death the land shall be sold and the proceeds divided among his children, not according to the Statute of Descent, but in amounts specified in the will.

3. SAME—*when will effects an equitable conversion of land into money.* An express direction by the testator that his land shall be sold after his wife's death and the proceeds divided among named persons in specified amounts effects an equitable conversion of the land into money, and the gifts of such proceeds are regarded as bequests of personal property.

4. SAME—*effect of a lapse where a will effects an equitable conversion.* Death of one of the testator's children before his own death does not destroy an equitable conversion of land into money, made by the will for the testator's children, but the lapsed bequest goes to those entitled thereto, as personal property, no contrary intention appearing from the will.

5. SAME—*executor takes such title in trust as is necessary to execute the trust.* Where a will requires the absolute sale of the testator's lands after the termination of his wife's life estate, the executor takes the remainder in fee in trust, for the purpose of selling the fee simple title after the death of the wife.

6. SAME—*when power of sale is not to be exercised within one year from testator's death.* A clause in the provision of the will appointing the executor and fixing his compensation, which states that he is to have "one year after my decease to sell the land," will be construed as meaning "one year after my wife's decease," where it is clear from the entire will that the testator did not intend the land to be sold until after his wife's death.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

LOUIS FITZHENRY, and D. D. DONAHUE, for appellant:

When a contingent remainder or a power of sale is given, to be exercised in the future upon the happening of an event, the fee descends to the testator's heirs-at-law, to be divested upon the happening of the contingency, if it is a contingent remainder, and upon the execution of the power, if it is a power of sale, unless the testator in the meantime vested the fee in some one other than the heir. 2 Washburn on Real Prop. chap. 7, sec. 1, sub-title 9; *Lambert* v. *Harvey,* 100 Ill. 338; *Savage* v. *Burnham,* 17 N. Y. 561; *Peterson* v. *Jackson,* 196 Ill. 40; *Harrison* v. *Weatherby,* 180 id. 418; *Chapin* v. *Nott,* 203 id. 341.

A will must be construed in the light of events not later than the death of the testator. *Carney* v. *Kane,* 40 W. Va. 758; *Birdsell* v. *Applegate,* 40 N. J. L. 244; *Gray* v. *Hardesty,* 50 id. 206.

The occurrence of a subsequent event cannot change the construction of a will. *Downer* v. *Downer,* 9 Watts, 60; *Beeson* v. *Breeding,* 77 Pa. 156.

A construction which will harmonize the conflicting clauses of a will is to be preferred to one which will create a conflict, so as to necessitate the supplying of words to abrogate the conflict thus created. *Tyson* v. *Blake,* 22 N. Y. 558; *Lomax* v. *Shinn,* 162 Ill. 124; *Healy* v. *Eastlake,* 152 id. 424; *Jenks* v. *Jackson,* 127 id. 341.

When the time fixed for the performance of an act depends upon a contingency happening so as to ascertain the time for its performance, and the act to be performed must be performed within a fixed time, there is no legal obstacle for its performance within the time fixed, for the contingency may happen at any time. *Warner* v. *Railroad Co.* 164 U. S. 418; *Caring* v. *Carr,* 167 Mass. 544; *Railroad Co.* v. *Wood,* 88 Tex. 191; *Kent* v. *Kent,* 62 N. Y. 560; *Manufacturing Co.* v. *Hollenback,* 118 id. 586; *Blake* v. *Voight,* 134 id. 74; *Sidden* v. *Rosenbaum,* 85 Va. 928; *White* v. *Murtland,* 71 Ill. 252; *Heath* v. *Heath,* 31 Wis. 223; *Burney* v. *Ball,* 24 Ga. 515; *Hutchinson* v. *Hutchinson,* 46 Me. 154.

"Contingent," when applied to use, remainder, devise, bequest or interest, means that no present interest exists, and that whether such right or interest will exist depends upon a future uncertain event. The legal definition of the word accords with its ordinary acceptance in showing that the term "contingent" implies a possibility. Bouvier's Law Dic.

When a right or interest is given upon a contingency and the contingency cannot take place, the contingent right becomes extinguished. *Rebman* v. *Bierdorf,* 186 Pa. St. 401; Page on Wills, sec. 671.

A wife of a testator takes as a purchaser for value when the gifts given her by will are inconsistent with her statutory rights, and has also a preference over volunteers in the same will. *Carper* v. *Crowl,* 149 Ill. 465; *Dauel* v. *Arnold,* 201 id. 581; *Welch* v. *Adams,* 152 Mass. 74; *Moore* v. *Alden,* 80 Me. 301; *Borden* v. *Jenks,* 140 Mass. 564; *In re Gelzean's Estate,* 34 Minn. 167.

When an estate is given to one for life and after the decease of the life tenant to trustees, "to sell as soon as conveniently may be after the testator's decease," the trustees joining with the tenant can sell at any time after the decease of the testator. *Mills* v. *Dugmore,* 30 Beav. 104; Perry on Trusts, sec. 773; *Styer* v. *Fraes,* 15 Pa. St. 339; *Gast* v. *Porter,* 13 id. 533.

So where a life estate is given to one and a sale to be made at the life tenant's death, a rejection of the life estate will accelerate the sale. *Styer* v. *Fraes,* 15 Pa. St. 339; *Gast* v. *Porter,* 13 id. 533.

The rule that an heir shall not be disinherited except by express words or necessary implication is supported by the rule that when two constructions can be given to the terms of a will, the one in favor of the heir will be adopted, even though it is not the more reasonable construction. *Matter of Brown,* 93 N. Y. 296; *Lyons* v. *Aker,* 33 Conn. 222; *Gerry* v. *Skelding,* 62 id. 499; *Law* v. *Harmony,* 72 N. Y. 299; *Matter of Patton,* 111 id. 480; *Soper*

v. *Brown*, 156 id. 252; *Ferrow* v. *Pyre*, 81 id. 281; *Bane* v. *Wick*, 19 Ohio St. 328; *Davis* v. *Davis*, 62 Ohio, 441.

When a legacy is given to a person from the proceeds of land to be sold by the executor, and the legatee dies before the testator and no other disposition is made of the proceeds, the object and purpose of the will have failed to the extent of the legacy and the land will descend to the testator's heirs-at-law, and the amount of land is determined by the amount of the legacy compared with the entire value of the land. A sale by the executor will not convert the land into personal property, but the money will be distributed as land. The heir, in such a case, has a right to maintain a bill to quiet title. *Dorsey* v. *Dodson*, 203 Ill. 32; *Rhode Island Hos. Co.* v. *Harris*, 20 R. I. 408; *Hovey* v. *Dary*, 154 Mass. 7.

A direction to convert land into money does not effect a conversion as to the heir, but only as to those who take under the will when the fee is undisposed of by the testator. The land is land, as to the heir, until a sale is made. *Estip* v. *Armstrong*, 91 Cal. 759; *Hoxton* v. *Corse*, 2 Barb. Ch. 521; *Clindenan* v. *Lanius*, 3 Ind. 441; *Savage* v. *Burnham*, 171 N. Y. 561; *Vincent* v. *Newhouse*, 83 id. 505; *Underwood* v. *Curtis*, 127 id. 533; *DeWolf* v. *Lawson*, 61 Wis. 469; *In re Walkerly's Estate*, 108 Cal. 627.

Where a power of sale is given to carry out the provisions of a will and the proceeds of the sale are to be given to the "heirs" of the testator, the use of the word "heirs" indicates an intent on the testator's part not to convert the land into personalty but that the proceeds shall be distributed as real estate. A conversion before a sale is but an equitable fiction, which a slight intent to the contrary will dispel. *In re Bingham*, 127 N. Y. 296.

WELTY, STERLING & WHITMORE, for appellees:

A power of sale is created by the express terms of the will. *Ebey* v. *Adams*, 135 Ill. 80; *McCartney* v. *Osburn*, 118 id. 403.

The power of sale is mandatory, but the time of its exercise is directory. *Welsch* v. *Bank,* 94 Ill. 191; *Mash* v. *Love,* 42 N. J. Eq. 112; *Hale* v. *Hale,* 137 Mass. 168; *Shalter & Ebling's Appeal,* 43 Pa. St. 89.

The sale by Frank O. Lash of his interest did not destroy the power of sale. *Baker* v. *Copenbarger,* 15 Ill. 103; *Robison* v. *Botkin,* 181 id. 182; *Dorsey* v. *Dodson,* 203 id. 32.

The will creates a trust for each legatee, which he is entitled to have carried out. *Ebey* v. *Adams,* 135 Ill. 80; *Dorsey* v. *Dodson,* 203 id. 32; *Robison* v. *Botkin,* 181 id. 182; 3 Pomeroy's Eq. Jur. sec. 1171.

To maintain a bill to quiet title the party must be in possession, unless the land is vacant and unoccupied. *Glos* v. *Huey,* 181 Ill. 149; *Glos* v. *Kemp,* 192 id. 72; *Glos* v. *Randolph,* 133 id. 197; *Johnson* v. *Huling,* 127 id. 14.

Mr. JUSTICE BOGGS delivered the opinion of the court:

Isaac Lash, of McLean county, departed this life May 13, 1902, seized of the title to the west half of the east half of section 27, and the west half of the north-east quarter of section 31, in town 23, north, range 2, east of the third principal meridian, in said county. He left his last will and testament, which reads as follows:

"I, Isaac Lash, of the city of Bloomington, in the county of McLean and State of Illinois, aged eighty-one (81) years, being of sound and disposing mind and memory, do hereby make, publish and declare this instrument to be my last will and testament. That is to say, after the payment of my debts and funeral expenses I give and devise to my beloved wife, Anna Lash, all those tracts or parcels of land described as the west half of the east half of section No. twenty-seven (27), also the west half of the north-east quarter of section No. thirty-four (34), all being in township No. twenty-three (23), north, range two (2), east of the third principal meridian, situate in the county of McLean and State of Illinois. To have and to hold, together with the rents and profits thereof,

during her natural life, and at her death the above described lands shall be sold and the proceeds thereof shall be divided as follows between my heirs, to-wit: To my daughter Eliza Jane Lash I give the sum of $1000. To my son James A. Lash I give the sum of $1000. The balance of the proceeds of the sale of the foregoing described lands shall be divided equally between my six (6) children, to-wit: Martha Ann Lash, Levi A. Lash, David N. Lash, Mary E. Orendorf, (formerly Mary E. Lash,) Frank O. Lash and William E. Lash, save and except Martha Ann Lash is to have $600 out of my estate over and above her equal share with the other five heirs. The sum of $1000 is to be deducted from Mary E. Orendorf's share and to be equally divided between Martha Ann Lash, Levi A. Lash, David N. Lash, Frank O. Lash and William E. Lash, I having to pay $1000 for Mary E. Orendorf as guardian. I give all my personal property to my beloved wife, Anna Lash. I hereby appoint William E. Lash, of McLean county, Illinois, executor of this instrument without bond, hereby revoking all former wills by me made. My executor shall have the use of the above described lands for one year free of rent, and is to have one year after my decease to sell the lands, and charge no fee for settling up the estate."

On the first day of July, 1903, the appellant filed this his bill in chancery, in which, as amended, he alleged the execution and probate of the will; that the testator was his father, and that certain of the appellees herein were the other heirs-at-law of the testator; that Martha Ann Lash, a daughter of the testator and one of the persons entitled, under the will, to a portion of the proceeds arising from the sale of the land, departed this life after the execution of the will and before the death of the testator; that the true construction of the will is, to quote from the bill, "that the said lands were to be sold and the proceeds divided among the testator's children, providing that the said wife died within the space of one

year after the testator's death, but that the said wife did not die within the space of one year, and that the power of sale and gifts were contingent upon the death of the said wife within the space of one year after the death of the testator, and the said power of sale and gifts being contingent upon the death of the said wife within one year after the testator's death, failed, and neither the gifts and power of sale ever vested;" that the provisions of the will as to the said Martha Ann Lash, deceased, lapsed by reason of her death prior to the death of the testator, and that, as the legal effect thereof, the interest of Martha Ann in said lands became intestate property, and descended, as land, to the heirs-at-law of the testator, of whom one was the appellant. The bill also alleged that on June 28, 1902, Frank O. Lash conveyed all his right, title and interest in the land, under the will of Isaac Lash, to William E. Lash, the executor and the possessor of the power of sale, and that the grantor warranted all his interest in said land to the grantee, and the deed expressly covenanted "that in the event of the sale of the said land by the executor of the will of Isaac Lash, deceased, or otherwise, the said grantee shall take all the proceeds arising from the grantor's interest." The bill also averred that by reason of errors, omissions and misdescriptions in conveyances in the chain of title to the lands, different persons (some seventy-five in number, who were also named and made parties defendant to the bill,) had apparent interests in the title to the land. The prayer of the bill was that a decree should be entered finding the title in fee to the lands to be in the heirs-at-law of the said testator as tenants in common, and ordering that the title thereto should be quieted and the lands be partitioned and allotted in severalty to said complainant and the other heirs-at-law of the testator, in accordance with their rights and interests, under the Statute of Descent, as such heirs-at-law and tenants in common. A general

demurrer to the bill was sustained and a decree entered dismissing the bill for want of equity, at the cost of the appellant. From this decree the appellant has prosecuted this appeal.

We think the demurrer was properly sustained. It is very clear from a consideration of the will that it was the intention of the testator that the land should not descend, as land, to his heirs-at-law. He caused it to be set down plainly and explicitly in his will that his wife should have the use and benefit of the land during her natural life, and that after the death of his wife the land should be sold and the proceeds paid to his sons and daughters,—not in the proportions in which it would descend under the Statute of Descent, but in amounts and proportions as fixed upon by himself and specified in the will. The direction that the land shall be sold is positive and absolute, the only restriction being that the sale should not be made until after the death of his widow. The testator did not contemplate that in any contingency his heirs-at-law, or any of them, would succeed to the title to the land. The testator did not in express terms confer power on the executor to sell the land, but the executor was charged, by law, with the duty of applying the fund produced by the sale of the land to the payment of the amounts ordered by the will to be paid therefrom to the appellant and the other persons designated in the will to receive it, and power to sell the land vested in the executor by implication of law. (11 Am. & Eng. Ency. of Law, 1046; Williams on Executors, p. 413; *Rankin* v. *Rankin*, 36 Ill. 293.) Moreover, there is an express recognition that the executor possessed such power, to be found in the provisions of the concluding sentence of the will. This final sentence of the will was incorporated therein for the purpose of nominating an executor and for providing the compensation to be paid to such executor, and in it is to be found the language on which the appellant bases the contention that the power of the

executor to sell the land and convert it into personalty for distribution as such, was contingent upon the death of the wife of the testator within one year after the testator's death. In this clause of the will it is provided that the executor, as his compensation for his services in that capacity, shall have the use of the lands of which the testator died seized, for one year, free of rent, and then follows this provision: "and is to have one year after my decease to sell the lands."

Aside from this quotation the intention of the testator, to be collected from the context of the will in all of its parts, is clear. It was, that his wife should have the use, benefit and control of the lands during her natural life, and that at her death the land should be sold and the proceeds applied by the executor as directed in the will. Of this there can be no room for debate or doubt. It is manifest it was not intended to abrogate this intent and change the whole purpose of the will by the clause appointing the executor and providing for his compensation. The testator having decided to appoint his son William E. Lash executor of the will, and to pay such executor for his services by giving him the use of the land for one year without rent, in view of the former provisions of the will that the widow should have the use of the land until her death and that the land should be sold at the death of his widow, found it necessary to add a provision that would secure to his executor such use of the land for one year after the death of the widow and before a sale should be made. In attempting to accomplish this object the testator, after declaring the executor should have the use of the lands for one year free from rent, used the phrase, "and is to have one year after my decease to sell the lands." It is beyond question the language thus employed did not accurately or correctly express his meaning. It is unmistakable, when the whole will is considered together and the plan and scope thereof disclosed, that he intended that his executor should

have one year after the death of his (testator's) wife in which to use the land before selling the same, and in consideration of which use the executor was to "charge no fee for settling up the estate," and therefore was not to be required to sell the land until the expiration of the period of one year after the death of the wife of the testator. What the testator intended to express by that portion of the will from which the quotation is made was, that his executor should have one year after the decease of his (testator's) wife in which to use and sell the land, and such intent would have been clearly expressed if the word "wife's" had been inserted between the word "my" and the word "decease" in the sentence hereinbefore quoted. It is, we think, clear that word was omitted in drafting the will. The ambiguity or apparent inconsistency arising on the face of the will is plainly ascribable to the omission of that word. It may therefore be supplied by the court in order to effectuate the intention of the testator as gathered from the context of the will. (2 Jarman on Wills, chap. 16, *486, 60; 29 Am. & Eng. Ency. of Law, 372; *Glover* v. *Condell*, 163 Ill. 566; *Blinn* v. *Gillett*, 208 id. 473.) The express direction of the testator that the lands should be sold after the death of his wife and the proceeds of such sale divided among appellant and other of the children of the testator, not in the proportions in which they would inherit under the Statute of Descent but in amounts or in proportions as fixed upon by himself and specified in the will, effected an equitable conversion of the land into money, and the bequests of the proceeds of the sale to the appellant and other legatees are to be regarded by the courts as bequests of personal property, and not as devises of interests in the land. *Baker* v. *Copenbarger*, 15 Ill. 103; *Crerar* v. *Williams*, 145 id. 625; *In re matter of Corrington*, 124 id. 363; *Dorsey* v. *Dodson*, 203 id. 32.

The effect of an election on the part of legatees to take the real estate ordered to be sold instead of be-

quests of money arising from the sale thereof is not here involved, for the reason, in instances in which such election may be made, the concurrent action of all the legatees thereto is necessary. (*Jennings* v. *Smith*, 29 Ill. 116; *Strode* v. *McCormick*, 158 id. 142.) Here the conversion of the land into money is to be considered as having been effected at the time of the death of the testator. (*Wurt's Exrs.* v. *Page*, 4 C. E. Green, 365, and *Dodge* v. *Pond*, 23 N.Y. 69, both cases being also cited with approval in *In re matter of Corrington, supra.*) That the sale of the land was to be postponed until after the death of the life tenant had no effect to prevent a conversion. (7 Am. & Eng. Ency. of Law,—2d ed.—468.)

The executor became also a trustee, and as such was charged with the positive, absolute and unconditional duty to sell the fee simple title to the land to the purchaser at the sale to be made after the death of the widow. The trustee, therefore, by implication of law, acquired by the will such estate in the land as was necessary to enable him to sell and convey it. (*Ebey* v. *Adams*, 135 Ill. 80; *Lawrence* v. *Lawrence*, 181 id. 248.) The exigency of the trust required the title to the remainder in fee should pass to and vest in the executor in trust, and such estate therefore vested in the trustee. The appellant did not, as an heir-at-law of the testator, succeed to any estate whatever in the land. (*Jennings* v. *Smith*, *supra.*) The bequest to the appellant of the sum of $1000 of the proceeds of the sale of the land was a bequest of personalty, and did not invest him with any estate of freehold in the land itself. *Nevitt* v. *Woodburn*, 175 Ill. 376.

Martha Ann Lash having died without issue before the death of the testator, the bequest to her of a portion of the proceeds arising from the sale of the lands lapsed, and under the provisions of section 11 of chapter 39, entitled "Descent," (2 Starr & Cur. Stat. 1896, p. 1433,) is to be considered and treated in all respects as intestate property. But the sale of the land by the executor was

essential to the purposes of the will, notwithstanding the fact that one of the persons entitled, under the will, to take a portion of the proceeds of the sale of the land as a bequest had died during the lifetime of the testator, and that for that reason such bequest lapsed. The necessity for the conversion of the land into money remained, notwithstanding the lapsing of one of the bequests to be satisfied by such conversion. The death of Martha Ann Lash did not work a failure of the conversion of the land into money, such conversion being necessary to satisfy other purposes of the will. In such cases the lapsed bequest goes to those entitled to take, as intestate personal property or in the form of money, no contrary intent appearing from the context of the will. (*Dorsey* v. *Dodson, supra.*) The appellant did not acquire any estate or interest in the land by reason of the death of Martha Ann Lash and the lapsing of the bequest to her.

Though it is alleged in the bill that Frank O. Lash conveyed to William E. Lash, the executor, an interest in the land, it appears from the further allegations of the bill that the instrument called a conveyance was so qualified by an express covenant therein incorporated that it constituted nothing more than an assignment of the bequest of that portion of the proceeds of the sale of the land which Frank O. Lash would be entitled to receive under the will. The transaction between Frank O. Lash and the executor could not operate to defeat the intention of the testator or prevent the operation of the equitable doctrine of conversion.

The appellant not having any interest in the land, had no standing as complainant in a bill for partition or to quiet title to the land, and the demurrer to the bill was properly sustained.

The decree is affirmed.

*Decree affirmed.*