# Nellie M. Olcott, et al., v. John W. Tope, Executor, etc., et al.

### Gen. No. 11,229.

1. FEE—*when gift of, will be implied from language of will.* While it is true that heirs at law will not be disinherited by conjecture, yet where from the language of the will itself the intent of the testator can be clearly conceived and is not contrary to some positive rules of law, it must prevail, though the gift is not made in formal language.

2. CONSTRUCTION—*when omitted words of will may be supplied.* Where it is clear from the language of a will that certain words have been omitted, such words will be supplied by the court in order to effectuate the intention of the testator as gathered from the context of the will.

3. CONSTRUCTION—*"or" when equivalent to "and."* Where, from the language of the will, it is apparent that the testator used the word "or" as the equivalent of "and," it will be so construed.

4. CONSTRUCTION—*what, should be given will.* A will should be so construed as to give effect to every part of it without change or rejection, provided an effect can be given not inconsistent with the general intent as gathered from the entire will.

5. WILL—*what court will look to in construing.* In construing a will the court will look at the state of the property devised in endeavoring to ascertain from the language used, the intention of the testator.

6. TRUSTEE—*what estate taken by.* The estate of a trustee in real estate is commensurate with the powers conferred by the trust and the purposes to be effected by it.

BAKER, J., dissenting.

Proceeding for construction of will. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1903. Affirmed. Opinion filed July 12, 1904.

**Statement by the Court.** This is a bill filed by appellee praying for a construction of the will of Anna B. Moore, deceased, and asking the direction of the court.

Letters were issued to appellee as the executor named in the instrument and he proceeded to administer the estate. September 29, 1902, he was discharged as executor. The bill states that it became necessary to sell the real estate to pay debts; that this was done under the direction of the Probate Court and the debts paid; that there was left in

the hands of appellee as executor a balance of $4,924.76 be-
longing to the estate, which it is claimed by the terms of
the will appellee should hold and manage for the purposes
therein stated; that appellee is advised and believes that in
accordance with the provisions of the will, he should invest
the money in his hands for the benefit of Charles Leslie
Spikings, the amount with its accumulations to be paid to
him when he shall reach the age of twenty-one years; that
in the event of the death of said Spikings before arriving
at that age, the accumulated fund should be paid to Mary
Spikings, mother of Charles Leslie Spikings; that in the
event of her death before the death of Charles Leslie Spik-
ings, and of his death before reaching the age of twenty-
one years, the fund should be distributed to the next of kin
and heirs at law of said Anna B. Moore, deceased; that t
is the right and duty of appellee to invest the funds so re-
maining in his hands and the income therefrom, and to
reinvest the same in such manner as will in his judgment
be safe and promote the interests of the estate.

Answers were filed by the surviving heirs and next of
kin who are nephews and nieces of Anna B. Moore, de-
ceased, claiming that by the terms of the will any moneys
remaining in appellee's hands arising from the sale of the
real estate should be distributed to the legal heirs of the
deceased according to the laws of descent.

The decree appealed from finds *inter alia* that Mary
Spikings and Charles Leslie Spikings are sole beneficiaries
under the will, and that the true intent and meaning of its
provisions are in accordance with the views of the executor
as set out in the bill.

The will is as follows:

" This memorandum I wish as my last will and testament
being written and witnessed by my request. I desire Dr.
J. W. Tope to act as my executor. I wish my executor to
collect the rents of my farm in Leyden Tp., Cook Co., Ills.,
and any other indebtedness due me, and pay all just debts
that I may be owing at my decease; at the expiration of
the term for which my farm is leased I desire my executor
to either lease the same again or sell it, whichever in his

Olcott v. Tope.

judgment is to the best interest of my estate. After the payment of all of my debts, I desire my executor to invest the surplus rent, or in case of the sale of the property heretofore mentioned, or any moneys derived from any source which may be owing at my decease, for the benefit of Charles Leslie Spikings, son of Charles and Mary Spikings of Chicago, Cook Co., Illinois, and to be paid to him when he shall have arrived at the age of twenty-one years.

In case the said Charles Leslie Spikings should die before arriving at the age of twenty-one years, I desire that whatever money or property of any kind which would belong to him under the will, to go to his mother Mary Spikings—and in case of her decease prior to the decease of her son Chas. Leslie Spikings, I desire the property to be distributed to my legal heirs according to the laws of Illinois.

Signed by me as my last will and testament this 28th day of January, 1899.

her<br>
Anna (X) B. Moore.<br>
mark

Witnessed at her request and signed and sealed in the presence of each other this 28th day of January, 1899.

H. S. Hubbell, 118 43rd St.,<br>
Chicago, Ill.<br>
Mrs. M. J. Bunnell [l. s.]

State of Illinois, } ss.
County of Cook,

Personally appeared before me, a notary public in and for said county, Anna B. Moore, and acknowledges the above will to be her free and voluntary act.

Given under my hand and notarial seal this 29th day of January, 1899.

[seal.]                              Henry S. Hubbell,
                                     Notary Public."

Anna B. Moore died the day following the execution of the above instrument, which it appears from the bill was contested and found to be her last will and testament.

Bradley & Weldon, Bowles & Bowles and Frederick Mains, for appellants.

Jesse A. & Henry R. Baldwin, Frank H. T. Potter and Julius A. Johnson, for appellees.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of the heirs at law of Anna B. Moore, deceased, that no intention is expressed by the language of the will to devise the fee of the land or to dispose of the principal sum derived therefrom; that having a farm which was leased and assuming that the income therefrom would be more than sufficient to pay her debts the testatrix intended to leave to Charles Leslie Spikings only the surplus of such rent as might be due at the time of her death, together with any other moneys then due her estate, as a modest bequest in evidence of her affection for him; that the executor has a mere power of sale and that the proceeds must be distributed among the heirs at law, since, as is claimed, the fee was vested in them upon the death of the testatrix.

We are unable to agree with these contentions. It is true that " heirs at law are not to be disinherited by conjecture, but only by express words or necessary implication," (29th A. & E. Ency. of Law, 1st ed., p. 352) and that a court of equity will not undertake to rectify a mistake in a will. Engelthaler v. Engelthaler, 196 Ill. 230–235. But where from the language used in the will itself the intent of the testator can be clearly conceived and is not contrary to some positive rule of law it must prevail, though the gift is not made in formal language. Powell v. McDowell, 194 Ill. 396–397, and cases there cited.

In the present case there is no serious difficulty in discovering the intention of the testatrix as expressed by the language of the will, taking into consideration all its parts. The contention of appellants is based upon the absence of words explicitly devising the real estate or its proceeds. There is no want of clearness until we come to the following: " After the payment of all my just debts, I desire my executor to invest the surplus rent, or in case of the sale of the property heretofore mentioned, or any moneys derived from any source which may be owing at my decease, for the benefit of Charles Leslie Spikings, son of Charles and

Mary Spikings of Chicago, Cook Co., Illinois, and to be paid to him when he shall arrive at the age of twenty-one years." The ambiguity in this is due in part to an equivocal or superfluous use of the word " or," and to the omission of other words implied but not expressed, but which may be with propriety " supplied by the court in order to effectuate the intention of the testator as gathered from the context of the will. 2 Jarman on Wills, chap. 16, p. 486, 60; 29 Am. & Eng. Ency. of Law, 372; Glover v. Condell, 163 Ill. 566; Blinn v. Gillett, 208 Ill. 473." Lash v. Lash, 209 Ill. 595–604. In the last mentioned case the will provided that the executor should " have one year after my decease to sell the lands." The court finds that the intention collected from the context of the will was that the wife should have the use and benefit of the lands during her natural life and that at her death the land should be sold and the proceeds applied by the executor as directed in the will. It is held that what the testator intended to express by that portion of his will was that the executor should " have one year after my (wife's) decease to sell the lands; " that the word " wife's " was omitted in drafting and that the ambiguity or apparent ·inconsistency on the face of the will is ascribable to that omission, which may be supplied to effectuate the intention of the testator.

In the case before us the testatrix provided for the collection of the rents of her farm and any other sums due her and their application in payment of her own debts. Then she authorized her executor either to let the farm again after the expiration of the then existing lease or to sell it, whichever would be in his judgment for the best interest of the estate, thus indicating a purpose that the executor should control the farm and its proceeds after her death. Then follows the language above quoted, over the meaning of which this controversy arises. What the testatrix obviously intended to express, reading this part of her will in connection with the whole instrument, is, in substance, that the executor shall invest the surplus rent (and a surplus might be expected if he should relet the farm for

a term of years), or in case of the sale of the farm that he shall invest any moneys derived from such sale, and from any source, including money owing to her at the time of her decease, for the benefit of Charles Leslie Spikings, the sum with its accumulations to be paid to him if he lives to attain the age of twenty-one years.   With slight changes, not rejecting any words, reading "or" as "and" where it evidently has that meaning, and supplying a verbal omission in order to effectuate the intention of the testatrix as gathered from the context of the will (Lash v. Lash, *supra*,) the provision in controversy will read as follows:   "After the payment of all my just debts, I desire my executor to invest the surplus rent, or in case of the sale of the property heretofore mentioned, *the proceeds and* (or) any moneys derived from any source which may be owing at my decease for the benefit of Charles Leslie Spikings."   We are of opinion that the italicized words we have supplied are implied from the connection and context and from the will as a whole.   The word "or" which we read as meaning "and," is conceded by counsel for some of the appellants to have that meaning in this connection, and in behalf of other appellants it is claimed that it should be discarded altogether as having no meaning.   In Boyles v. McMurphy, 55 Ill. 236, 238, 239, the word "or" as used in the eleventh section of the Dower Act, "shall thereupon be entitled to dower in the lands *or* share in the personal estate of her husband," is construed in connection with the preceding section as meaning "and."   In Ebey v. Adams, 135 Ill. 80, is a discussion of the effect of the word "or" in a will between the name of the devisees and the words "their heirs."   In Bouvier's Law Dictionary (title "or"), it is said, "'*or*' is often construed '*and*,' and '*and*' construed '*or*' to further the intent of the parties in legacies, devises, deeds, bonds and writings," citing authorities.

A will should be so construed as to give effect to every part of it without change or rejection, provided an effect can be given not inconsistent with the general intent as gathered from the entire will.   See A. & E. Ency. of Law,

Olcott v. Tope.

vol. 29, p. 350, 1st ed. The words " or in case of the sale of the property heretofore mentioned " as they stand in the will suggest a purpose and intent of the testatrix not fully stated, a verbal omission which is implied. Young v. Harkleroad, 166 Ill. 318–325. To give effect to those words requires their construction in accord with the rest of the instrument. They distinctly refer back to the power of sale given to the executor in words which precede them. The " property heretofore mentioned " is the farm which the executor had just been authorized and directed either to lease or sell. If leased, the executor is authorized and directed to invest the surplus rent. If sold, the testatrix evidently intends, as the context indicates, to provide for the investment and disposition of the proceeds in the same way, together with any money derived from any other source. Otherwise the reference to " the sale of the property heretofore mentioned " in that connection would have no meaning. Having provided for the disposition of the surplus rent in case of reletting, the disposition of the proceeds in case of the other alternative—a sale, was the next proper, orderly and logical thing to be provided for in that connection. This provision she evidently intended to make and supposed she had made, and though she failed to employ apt language, we are of opinion the intention is sufficiently manifest in the language used that both surplus rent and proceeds of " sale of property heretofore mentioned " are alike to be invested for Charles Leslie Spikings and to be paid to him when he comes of age. This conclusion is justified, if it needs justification, by phraseology employed in the concluding paragraph of the will. As we have said, and it is perfectly apparent from the context, the testatrix refers to the farm in the words " in case of the sale of property heretofore mentioned," using the word " property " to designate the only real estate mentioned in the will. In the concluding paragraph of her will she uses the same word, evidently in the same sense, where she says, " I desire that whatever money or property of any kind which would belong to him (Spikings) under

the will to go," etc., thus distinguishing between the ".money" which would so belong to him and the "property" or farm which she evidently expects and intends shall belong to him also. The rents and other indebtedness are specifically given to Spikings in language not questioned, and are properly referred to as "money" in distinction from the farm, which is spoken of as "property." But except in the controverted part of the will above considered there is no specific bequest to Spikings of any "property" except the "money" to be collected from rents and debts due her. Yet the testatrix speaks not only of " money " but of " property," also as what " would belong to him under the will " unless he " should die before arriving at the age of twenty-one years," thus indicating clearly that such was her intention, and also, as we think, tending to show that she supposed the language before employed expressed such intention. " The inquiry always is, what did the testator intend? and the answer is to be sought for and found in the provisions of the will, taking into consideration all its parts, and giving to the language the sense in which it was used by the testator. For this purpose the court will look to every provision of the will, the better to understand the plan of distribution adopted and the purpose of the testator in making the particular provision under consideration." Ebey v. Adams, 135 Ill. 80–86.

The intent of the testatrix in the case before us is further evidenced by the later language of the will where it is provided that the " property," using the same word before applied to the farm in distinction from the money referred to in the will, shall be distributed to her legal heirs according to law only in case of the contingency therein stated. While mere words excluding the heirs at law will not suffice to disinherit unless the estate is actually given to some one else, such gift need not be in express terms " but may be by necessary implication " (Powell v. McDowell, 194 Ill. 394); and the words of exclusion or of contingent inclusion may alike serve to indicate the intention of the testatrix and aid in the interpretation of her will.

Olcott v. Tope.

The instrument as a whole shows beyond cavil an intention to provide for the legatee Spikings, and that the property, real and personal, should revert to the heirs only in the event of his death and that of his mother. The decree finds that it became necessary to sell the real estate to pay debts, the personal property not sufficing. The testatrix apparently anticipating such a contingency, gave the executor power to rent or sell for the benefit of her estate, which she follows with the statement that "after the payment of all my just debts, I desire my executor to invest the surplus rent, or in case of the sale," etc. As the sale of the realty was necessary to pay her debts, it is apparent that unless he is entitled to the proceeds of the farm Spikings will get nothing under the will. The rule is well recognized that in the construction of a will the court will look at the state of the property devised in endeavoring to ascertain from the language used the intention of the testator. Fisher v. Fairbank, 188 Ill. 187–191. The testatrix might well have had in mind the probability that the farm would have to be sold to pay debts, and in that event under the construction contended for by appellants the whole intent and purpose of the will would have been subverted and the only legatees mentioned would take nothing, while the heirs whom she specifically postpones in their favor would take the whole estate. Such was not the intention of the testatrix as indicated in the will.

It is claimed by appellants' counsel that the testatrix conferred upon the executor a mere power to lease or sell at the expiration of the term for which the farm was rented, and no legal estate in the land, and that hence the title descended to the heirs at law, who are, therefore, entitled to the proceeds. The estate of a trustee in real estate is commensurate with the powers conferred by the trust, and the purposes to be effected by it. "If the trustee is required to grant a fee, the fee must be conferred upon him." Lawrence v. Lawrence, 181 Ill. 248–251; Lash v. Lash, 209 Ill. 595–605. In Kirkland v. Cox, 94 Ill. 400–412, it is said, quoting from Perry on Trusts, sec. 305: "If the

trustee is to exercise any discretion in the management of the estate in the investment of the proceeds or the principal, or in the application of the income, or if the purpose of the trust is to protect the estate for a given time, or until the death of some one, or until division," the operation of the Statute of Uses is excluded, and the trusts or uses remain mere equitable estates. . And it is further said, quoting from the same author, in section 315 : "Thus, if land is conveyed to trustees without the word *heirs*, in trust to *sell*, they must have the fee, otherwise they could not sell. The construction would be the same if the trust was to sell the whole or a part, for no purchasers would be safe unless they could have the fee, and a trust to convey or lease at discretion would be subject to the same rule." In the case at bar the executor is authorized to sell or lease at discretion, and therefore was vested with the fee in trust.

The decree of the Circuit Court must be affirmed.

*Affirmed.*

Mr. Justice BAKER, dissenting.

REPORTERS' NOTE. This case was affirmed in 213 Ill. 124, and the above opinion adopted by the Supreme Court.